# 23-30

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

DEBRA A. VITAGLIANO

*Plaintiff-Appellant,*

v.

COUNTY OF WESTCHESTER,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of New York (Halpern, *J.*), No. 7:22-cv-9370

## JOINT APPENDIX

Mark L. Rienzi
Joseph C. Davis
Daniel L. Chen
Daniel M. Vitagliano*
THE BECKET FUND
   FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
   Suite 400
Washington, DC 20006
(202) 955-0095
*mrienzi@becketlaw.org*

*Not admitted to the D.C. bar; admitted to
the N.Y. bar; supervised by licensed D.C.
bar members

# JOINT APPENDIX
# TABLE OF CONTENTS

**Page**

Complaint (Dkt. 1) ............................................................... 1

Joint Rule 21 Stipulation & Proposed Order (Dkt. 25) .......................... 24

Order Granting Rule 21 Motion (Dkt. 27) ................................. 28

Defendant's Pre-Motion Letter (Dkt. 28) ................................ 29

Plaintiff's Response to Defendant's Pre-Motion Letter
    (Dkt. 29) ................................................................ 32

Memorandum Opinion & Order Granting Motion to
    Dismiss (Dkt. 31) ..................................................... 36

Judgment (Dkt. 32) ...................................................... 44

Notice of Appeal (Dkt. 33) ................................................ 45

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DEBRA A. VITAGLIANO,

     *Plaintiff,*

  v.

COUNTY OF WESTCHESTER;

GEORGE LATIMER, in his official capacity as County Executive of the County of Westchester;

– and –

JOHN M. NONNA, in his official capacity as County Attorney of the County of Westchester,

     *Defendants.*

Case No. 7:22-cv-09370

**COMPLAINT**

**DEMAND FOR
JURY TRIAL**

## NATURE OF THE ACTION

   1. If the right to free speech includes anything, it includes the right to engage in peaceful, face-to-face conversations on important matters in a public forum. Yet that is exactly what Westchester County has banned—prohibiting citizens from approaching others in public fora near an abortion clinic to peacefully discuss and distribute pamphlets and literature about alternatives to abortion, unless they first obtain consent.

   2. Plaintiff is a Westchester County resident who believes in the dignity of all human life, including the unborn. She seeks to stand on the public way outside of a White Plains abortion clinic, approach women entering the clinic, and initiate gentle,

1

compassionate conversations about the woman's situation and resources available should she decide to carry her child to term. Such conversations can be successful; indeed, in Plaintiff's experience most women who consider abortions do so only because they feel that they have no viable alternative and that no one cares about them.

3. Yet Westchester County does not want women to have this final opportunity to make a more fully informed choice. In June 2022, the County passed a new law that makes it illegal, within 100 feet of an abortion clinic, to "knowingly approach" within eight feet of another person to speak or distribute literature, "unless such other person consents."

4. The ban is content-based on its face—it applies only if the approach is "for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling" with the other person.

5. And the ban is not even related to, much less necessary for, maintaining clinic access or avoiding violence. To the contrary, the new law includes eight other overlapping subsections prohibiting every conceivable way in which a person could block access to a clinic or engage in violence near one, to say nothing of the numerous other applicable federal and state laws.

6. Instead, Defendants seem to have banned sidewalk counseling simply because the Supreme Court said they could, in a 2000 decision upholding a materially identical law in Colorado. *Hill v. Colorado*, 530 U.S. 703 (2000). Yet *Hill* was wrong the day it was decided, as the dissenting Justices explained. Its core legal premises have been expressly rejected in the Court's intervening cases. It has been subjected to withering

academic criticism, from all sides of the spectrum. And most recently, a majority of the Court recognized it as a "distort[ion]" of ordinary "First Amendment doctrines." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2276 & n.65 (2022).

7.  *Hill* reflects how the Court, having once "deprived abortion opponents of the political right to persuade the electorate that abortion should be restricted by law," erroneously permitted governments to take away "their individual right to persuade women contemplating abortion" to make a different choice. *Hill*, 530 U.S. at 741-42 (Scalia, J., dissenting). The Court has fixed the first problem. *See Dobbs*, 142 S. Ct. 2228. It is time to fix the second. Plaintiff's First Amendment rights have been violated, and she is entitled to relief.

## JURISDICTION AND VENUE

8.  This action arises under the Constitution and laws of the United States. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

9.  The Court has authority to issue the declaratory and injunctive relief sought under 28 U.S.C. §§ 2201 and 2202.

10. Venue lies in this district under 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

11. Plaintiff Debra Vitagliano is a United States citizen and resident of Port Chester, New York, in Westchester County.

12. Defendant County of Westchester is a duly incorporated county of the State of New York. A Westchester County law is the subject of this suit.

13. Defendant George Latimer is the County Executive of the County of Westchester. Defendant Latimer signed the challenged provision into law and is responsible for its enforcement. He is sued in his official capacity.

14. Defendant John M. Nonna is the County Attorney for the County of Westchester. The County Attorney is authorized in the challenged law to bring civil actions enforcing it. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

*Plaintiff's speech*

15. Plaintiff is an individual who—motivated by her belief in the inherent dignity of all human life—wishes to peacefully approach women entering abortion clinics and speak with them about alternatives to abortion. The County's law renders her a criminal, and subjects her to severe civil penalties, if she does so.

16. Plaintiff Debra Vitagliano is 64 years old and a mother of three.

17. Debra has worked as an occupational therapist for 42 years. She discerned this vocation at a young age after seeing a little girl using Lofstrand crutches on an Easterseals "Child of the Year" poster. Debra told herself that she wanted to work with children like that.

18. Debra primarily works with special needs children. Early in her career, her caseload was full of children diagnosed with spina bifida, hydrocephalus, Down syndrome, amelia, and various neurological disorders. In recent years, Debra has seen a

4

significant decrease of these types of disorders in the children she treats. She believes this is a result of abortions of children prenatally diagnosed with these conditions.[1]

19. Debra's work with special needs children has led her to see the inherent worth and dignity of all people, no matter their level of functioning.

20. Debra is a devout, practicing Catholic. Her religious beliefs are sincere and meaningful; they are the foundation of her life.

21. The Catechism of the Catholic Church teaches that life begins at conception and that abortion is "gravely contrary to the moral law." Catechism of the Catholic Church ¶¶ 2270-71.

22. Consistent with her Catholic faith, Debra opposes the practice of abortion, because she believes it is the deliberate destruction of innocent human life.

23. Two years ago, Debra felt called spiritually to live out her faith by getting involved with the pro-life movement.

24. In February 2021, Debra began participating in a peaceful prayer-vigil campaign at the Planned Parenthood in White Plains, New York.

25. At the outset of her participation, Debra reviewed materials from organizers that provide guidance for safe, lawful prayer vigils. These materials instruct

---

[1] *See, e.g.*, Candice Y. Johnson et al., *Pregnancy Termination Following Prenatal Diagnosis of Anencephaly or Spina Bifida: A Systematic Review of the Literature*, 94 Birth Defects Rsch. 857 (2012), https://onlinelibrary.wiley.com/doi/10.1002/bdra.23086; Stina Lou et al., *Termination of Pregnancy Following a Prenatal Diagnosis of Down Syndrome: A Qualitative Study of the Decision-Making Process of Pregnant Couples*, 97 Acta Obstetricia et Gynecologica Scandinavica 1228 (2018), https://ob-gyn.onlinelibrary.wiley.com/doi/epdf/10.1111/aogs.13386; Mary O'Callaghan, *Teaching Human Dignity: Prenatal Diagnosis & Disability Selective Abortion,* McGrath Inst. for Church Life (2019), https://perma.cc/XS8Y-JYA3; Sarah Zhang, *The Last Children of Down Syndrome*, The Atlantic (Nov. 18, 2020), https://perma.cc/SPC8-MVXY.

participants to obey all laws and not to trespass, threaten, touch others, display or discuss weapons, curse, or block anyone's path or right-of-way.

26. As part of the campaign, Debra engaged in prayer vigils, where she would stand and peacefully pray on the sidewalk and other portions of the public way outside the White Plains Planned Parenthood. At times she held signs that read, "Women Do Regret Abortion," "Men Regret Lost Fatherhood," and "Pray to End Abortion." Debra complied with the guidance she reviewed, making sure to remain on the public right-of-way and not to trespass or obstruct any lawful passage.

27. Some campaign participants engaged in sidewalk counseling, approaching women on their way into Planned Parenthood, speaking with them, and distributing pamphlets and other literature.

28. Debra felt called to engage in sidewalk counseling. She views it as a final attempt to turn pregnant women's hearts away from abortion and to save innocent unborn lives. She feels women who seek abortions are not fully informed of the procedure and their options. She wants to educate women on abortion, inform them of alternatives, and advise them of services and resources available to them if they carry their babies to term.

29. Debra did not immediately engage in sidewalk counseling because she felt she first needed proper training. She wanted to learn methods and techniques for approaching pregnant women, ideas for what to say to them, and how to handle the many different circumstances she may encounter.

30. Debra registered for and completed multiple online classes—one introductory course, and one advanced course lasting eight weeks—on consulting pregnant women at risk of abortion. She planned to use the knowledge she gained in the classes to engage in sidewalk counseling and to volunteer at crisis pregnancy centers.

31. In spring 2022, Debra requested and received pamphlets from local organizers, which she planned to distribute while engaging in future sidewalk counseling.

32. Upon completing her training courses, Debra signed up to volunteer as a "life consultant" at a crisis pregnancy center. Life consultants meet virtually one-on-one with women experiencing unplanned pregnancies and consult with them about their options and services available to them if they decide to carry their babies to term.

33. Debra first shadowed life consultants in their consultations at an in-person crisis pregnancy center so she could see in action the training she received in her classes. She observed pregnant women so grateful for help. One pregnant woman previously had an abortion and did not want to have another one but needed support. Another woman, who had no family in this country except her fiancé, cried joyfully in the consultation room because the life consultants were so helpful to her.

34. Debra now volunteers as a virtual life consultant for two hours each week.

35. Now properly trained and with experience as a life consultant, Debra is prepared to engage in sidewalk counseling. Debra would like to counsel women on the public way as they approach the White Plains Planned Parenthood.

36. Consistent with her training, she seeks to explore a woman's pregnancy issue and the details of her story by active listening and learning. She would ask about the

7

woman's needs, strengths, and areas of awareness (feelings, thoughts, wants, values, and beliefs), as well as the attitudes, feelings, and responses of the woman's parents and the unborn child's father.

37. Debra intends to begin her conversations outside the clinic by approaching a woman and saying, "You are not alone. We can help you" (or language to similar effect). She would inform the woman that there are people who will be there to love and care for her and her child should she carry the child to term, and she would seek to learn from the woman what in her life was leading her to consider abortion.

38. It is critical to Debra's ministry that she pay close attention to the woman's every word and body language, ask open-ended questions, interpret what she believes she is hearing, and observe and listen for contradictions and ambivalence to understand more deeply. Given the sensitivity of the discussion, and the need for close attention and eye contact to establish trust, Debra would need to approach within eight feet and within arm's reach to initiate her conversations and to distribute pamphlets, which is a distance that in any event Debra would view as normal for talking in a noisy public space. (The White Plains Planned Parenthood is located just off a busy, four-lane highway, near an exit ramp from the Cross Westchester Expressway.)

39. Debra would of course cease approaching if asked. But she could not begin by seeking permission to approach. Such a request would cut into her valuable window to communicate, would be easily ignored, and would undermine her message.

40. Next, Debra would share with the woman information about other options she might wish to consider. She would draw from her personal experiences as a mother and, if appropriate, as an occupational therapist.

41. Debra would then seek to offer the woman a vision for a fuller life and help the woman to value herself and her unborn child differently. Debra would tell the woman that she is made in the image and likeness of God, and that God loves her and even died for her.

42. Debra would also seek to empower the woman to choose life. She would offer her a pamphlet that contains information for services and resources available to the woman if she carries her baby to term.

43. Before she could begin putting her training into practice by sidewalk counseling, Westchester County passed the law at issue in this litigation.

### The County's Sidewalk Counseling Ban

44. In June 2022, Westchester County banned Plaintiff from engaging in sidewalk counseling by making it illegal to approach a woman entering an abortion clinic to engage in peaceful, gentle, and caring conversation about alternatives to abortion.

45. In particular, on June 27, 2022, the Westchester County Board of Legislators voted to enact the "Reproductive Health Care Facilities Access Act," adding Chapter 425 to the Laws of Westchester County. Defendant Latimer, the County Executive, signed the new Chapter 425 into law the next day.

46. Section 425(*i*) of the Laws of Westchester County—hereafter, the "Sidewalk Counseling Ban"—now reads as follows:

**App.09**

It shall be unlawful for any person to do the following:

i. knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way within a radius of one-hundred (100) feet from any door to a reproductive health care facility.

47. "Approach" is defined as "to move nearer in distance to someone." Laws of Westchester County § 425.21(a). "Reproductive health care facility" is defined as "any building, structure, or place, or any portion thereof, at which licensed, certified, or otherwise legally authorized persons provide reproductive health care services," with "reproductive health care services" in turn defined to include "services relating to pregnancy or the termination of a pregnancy." *Id.* § 425.21(k)-(l).

48. Violations of the Sidewalk Counseling Ban are misdemeanors punishable by fines and imprisonment. "[F]or a first conviction" a sidewalk counselor can be forced to pay a fine of up to $1,000 and be imprisoned for up to six months. Subsequent convictions are punishable by fines up to $5,000 and imprisonment of up to one year. *Id.* § 425.41(a)-(b).

49. The law also permits civil actions by abortion clinics, abortion-clinic employees, and their "invitee[s]," authorizing treble damages for, *inter alia*, "pain and suffering, psychological, and emotional distress damages … suffered as a result of" violations. *Id.* § 425.51. It further authorizes civil enforcement actions by the County Attorney "for injunctive and other appropriate equitable relief in order to prevent or cure a violation." *Id.* § 425.61.

***The impact on Plaintiff's speech***

10

50. The Sidewalk Counseling Ban prohibits Plaintiff's ministry of sidewalk coun-
seling, by banning the close approach it—or any other normal conversation—re-
quires.

51. Plaintiff's sidewalk-counseling ministry depends on initiating conversations at
the time at which women are most focused on their abortion decision—as they are on
their way into the clinic. Yet the Sidewalk Counseling Ban's 100-foot radius encom-
passes the entire public sidewalk in front of the White Plains Planned Parenthood,
and reaches well into the street on either side of the driveway leading into the clinic's
parking lot. Plaintiff's intended ministry would take place within the 100-foot radius.
She cannot effectively reach at-risk women if she is forced to remain outside the 100-
foot radius.

52. Thus, if Plaintiff wanted to engage in her ministry of discussing abortion with
women at the time they may need her support most, Plaintiff could either (a) raise
her voice at women from eight feet away; or (b) ask for explicit permission before
approaching for a conversation at normal range.

53. Yet Plaintiff seeks to discuss abortion and abortion alternatives with women
in a loving, caring manner, making eye contact and listening carefully to the woman's
own motivations and concerns. Such conversations cannot be conducted at a shout,
but rather require close proximity and a gentle tone of voice. It is essential to Plain-
tiff's ministry that these conversations be conducted within eight feet and within
arm's reach. This is so for numerous reasons—for Plaintiff's message of compassion
and support to be effectively conveyed, for Plaintiff to accurately discern the woman's

11

position, for the conversation to be respectful of the woman's privacy, and for Plaintiff to hand the woman a pamphlet or other literature about alternatives to abortion and resources available to her if she carries her baby to term.

54. Nor can the problem be solved by requesting explicit consent to approach. Such a request is easily ignored—especially when voiced from eight feet away or when the woman is arriving at the clinic by car. Meanwhile, Plaintiff believes that women are more likely to respond positively—and seek more information and come to a more informed decision—when the first words they hear from a counselor consist of a loving message of sympathy and support.

55. The Sidewalk Counseling Ban is content-based on its face. The consent requirement applies only if a speaker's speech includes certain categories of content—"protest, education, or counseling." If a speaker wishes to approach a woman to engage in speech of any other content—say, to take a poll, solicit donations, or ask for directions—she is free to do so.

56. The Board of Legislators committee report states that the Sidewalk Counseling Ban was justified to "maintain a person's right to safely access" abortion clinics and "avoid the potential for physical confrontation."

57. Yet the Sidewalk Counseling Ban is not limited to actions that impede "access" or threaten violence. Rather, it prohibits peaceful, one-on-one conversations on an issue of great public concern, which lie at the heart of the First Amendment.

58. Moreover, the committee report identified only one prior incident at a Westchester abortion clinic that supposedly motivated passage of the law: a

12

November 2021 trespassing where a Catholic priest and two other pro-life advocates entered a White Plains abortion clinic and remained inside for two hours, despite requests to leave from staff and police.

59. Yet that incident—which occurred *inside* the abortion clinic, rather than on the public right-of-way—was addressed under preexisting criminal trespass law, with the advocates being convicted and sentenced to jail time for their actions.

60. Further, the Sidewalk Counseling Ban is simply one of many restrictions addressing activities near abortion clinics adopted in Chapter 425. The law independently prohibits, *inter alia*, obstructing access; violence and any other unwanted physical contact; following and harassing; threats and intimidation; and "interfer[ing] with" (or attempting to interfere with) an abortion clinic's operations.

61. Indeed, the Sidewalk Counseling Ban is the last subsection of Section 425.31. The remainder of that section reads as follows:

> Sec. 425.31. Prohibited conduct.
>
> It shall be unlawful for any person to do the following:
>
> a. knowingly physically obstruct or block another person from entering into or exiting from the premises of a reproductive health care facility or a public parking lot serving a reproductive health care facility, in order to prevent that person from obtaining or rendering, or assisting in obtaining or rendering, medical treatment or reproductive health care services; or
>
> b. strike, shove, restrain, grab, kick, or otherwise subject to unwanted physical contact or injury any person seeking to legally enter or exit the premises of a reproductive health care facility; or
>
> c. knowingly follow and harass another person within twenty-five (25) feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility; or

d. knowingly engage in a course of conduct or repeatedly commit acts when such behavior places another person in reasonable fear of physical harm, or attempt to do the same, within twenty-five (25) feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility; or

e. by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate, or interfere with, another person in order to discourage such other person or any other person or persons from obtaining or providing, or assisting in obtaining or providing, reproductive health care services; or

f. by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate, or interfere with, another person because such person was or is obtaining or providing, or was or is assisting in obtaining or providing, reproductive health care services; or

g. physically damage a reproductive health care facility so as to interfere with its operation, or attempt to do the same; or

h. knowingly interfere with the operation of a reproductive health care facility, or attempt to do the same, by activities including, but not limited to, interfering with, or attempting to interfere with (i) medical procedures or treatments being performed at such reproductive health care facility; (ii) the delivery of goods or services to such reproductive health care facility; or (iii) persons inside the facility[.]

62. Moreover, numerous other federal and state laws address violence or obstructive conduct at abortion clinics, without prohibiting Plaintiff's intended speech.

63. The Freedom of Access to Clinic Entrances (FACE) Act, for example, makes it a federal crime to, "by force or threat of force or by physical obstruction," intentionally injure, intimidate, or interfere with abortion-clinic patients and providers. 18 U.S.C. § 248(a)(1). New York has a statutory analogue to the FACE Act. N.Y. Penal Law § 240.70. New York law likewise prohibits entering the property of another (including an abortion clinic) without permission, subjecting that conduct to both civil and criminal penalties. *Id.* § 140.10; *see Long Island Gynecological Servs. v. Murphy*, 298

14

A.D.2d 504, 748 N.Y.S.2d 776 (2d Dep't 2002) (affirming permanent injunction for trespassing at abortion clinic). And New York has generally applicable criminal statutes forbidding, *inter alia*, assault, N.Y. Penal Law § 120.00, harassment, *id.* §§ 240.25-26, and disorderly conduct, *id.* § 240.20.

64. Despite her earnest desire to engage in sidewalk counseling outside the White Plains Planned Parenthood, Plaintiff has not done so because of the Sidewalk Counseling Ban.

65. But for the Sidewalk Counseling Ban, Plaintiff would engage in sidewalk counseling.

66. Plaintiff has been—and, absent injunctive relief, will continue to be—irreparably harmed by the Sidewalk Counseling Ban, because of the chilling of her constitutionally protected speech.

***Legal background***

67. According to the committee report recommending its adoption, the Sidewalk Counseling Ban was based on a Colorado statute upheld by a divided Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000). The Sidewalk Counseling Ban is materially identical to the law at issue in *Hill*.

68. Like the Sidewalk Counseling Ban, the law in *Hill* made it unlawful, within 100 feet of an abortion-clinic entrance, to "knowingly approach" within eight feet of another person "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling," without that person's consent. Colo. Rev. Stat. § 18-9-122(3).

15

69. The *Hill* majority held that this law was content-neutral. On the face of the law, whether the consent requirement applied to an approach "depend[ed] entirely on *what* [*the speaker*] *intends to say*" upon accomplishing it. 530 U.S. at 742 (Scalia, J., dissenting). Yet the Court held that it "was not adopted 'because of disagreement with the message'" regulated speakers conveyed, and it could be "justified without reference to the content of regulated speech." *Id.* at 719-20 (majority opinion). It was therefore "content neutral." *Id.* at 725.

70. The Court thus declined to apply strict scrutiny, instead asking whether the law served "significant" government interests and was "narrowly tailored" to accomplishing them. *Id.* at 725-26.

71. The Court held that the law passed this test. The Court said the law served an interest in protecting the "right to avoid unwelcome speech." *Id.* at 716-17. And although the Court recognized the law would "sometimes inhibit a demonstrator whose approach in fact would have proved harmless," this "prophylactic aspect" did not render it not narrowly tailored. *Id.* at 729. Rather, it was "justified" because of the "difficult[y]" characterizing "each individual movement" "within the 8-foot boundary." *Id.*

72. *Hill* was a departure from prior First Amendment precedent, as Justices Scalia and Kennedy explained in separate dissents. The Court had "never held that the universe of content-based regulations" was limited to the categories identified by the majority; instead, laws were also content-based if they facially distinguished based on content. *Id.* 742-43, 746-47 (Scalia, J., dissenting). Nor had the Court ever before "establishe[d] a right to be free from unwelcome expression aired by a fellow citizen

in a traditional public forum." *Id.* at 771 (Kennedy, J., dissenting); *see also id.* at 765 ("The Court's holding contradicts more than a half century of well-established First Amendment principles.").

73. And as the Seventh Circuit has observed, recent Supreme Court decisions have "deeply shaken *Hill*'s foundation." *Price v. City of Chicago*, 915 F.3d 1107, 1119 (7th Cir. 2019).

74. First, in *McCullen v. Coakley*, the Court held that a Massachusetts law forbidding speakers from standing within 35 feet of abortion-clinic entrances violated the First Amendment. 573 U.S. 464 (2014). Explicating the meaning of content neutrality, the Court held that the law "would be content based if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred," *id.* at 479—the precise test for content neutrality the *Hill* majority had rejected, 530 U.S. at 720-21

75. Then, in *Reed v. Town of Gilbert*, the Court held that a city "sign code" violated the First Amendment. 576 U.S. 155 (2015). Citing *Hill*, the lower courts had upheld the sign code on the ground that the city "'did not adopt its regulation of speech because it disagreed with the message [it] conveyed' and its 'interests [were] unrelated to … content.'" *Id.* at 162-63. But citing the *Hill* dissents, *Reed* explained that the focus on "governmental motive" "misunderstand[s]" content neutrality. *Id.* at 166-67 (citing *Hill*, 530 U.S. at 766 (Kennedy, J., dissenting)). Rather, a law is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163. And "strict scrutiny applies *either* when a law is content based

17

on its face *or* when the purpose and justification for the law are content based." *Id.* at 166 (emphasis added). That is, "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 165.

76. *McCullen* also undermined *Hill*'s narrow-tailoring holding. While *Hill* had approved the "bright-line prophylactic" nature of the Colorado law, 530 U.S. at 729, *McCullen* reaffirmed the traditional understanding that "the prime objective of the First Amendment is not efficiency," 573 U.S. at 495. Rather, "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve [its] interests, not simply that the chosen route is easier." *Id.* at 467.

77. In short, "*Hill* is incompatible with current First Amendment doctrine as explained in *Reed* and *McCullen*." *Price*, 915 F.3d at 1117.

78. Indeed, *Hill* is an artifact of an era in which the Court could be criticized for carving out special rules from ordinary constitutional principles to protect abortion and disfavor those who oppose it. *Hill*, 530 U.S. at 741 (Scalia, J., dissenting); *see Dobbs*, 142 S. Ct. at 2276 (citing *Hill* dissents for proposition that abortion has "distorted First Amendment doctrines"). That era is now over. *See generally Dobbs*, 142 S. Ct. 2228. The Sidewalk Counseling Ban violates the First Amendment.

### CLAIMS FOR RELIEF

#### Count I

#### 42 U.S.C. § 1983
#### Violation of U.S. Const. Amend. I: Free Speech Clause
#### Content Discrimination

79. Under the First Amendment, "a government … 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed*, 576 U.S. at 163.

80. Thus, "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional." *Id.*

81. There are at least two ways in which a law can be content-based: first, if it "'on its face' draws distinctions based on the message a speaker conveys"; second, if it "cannot be 'justified without reference to the content of the regulated speech' or [was] adopted by the government because of disagreement with the" speech's message. *Id.* (cleaned up). A law that fails either test triggers strict scrutiny.

82. The Sidewalk Counseling Ban is content-based under both tests.

83. First, the Sidewalk Counseling Ban facially distinguishes based on content.

84. A law that defines "regulated speech by its function or purpose" is facially content-based. *Id.* The Sidewalk Counseling Ban does that. It applies only if a speaker approaches "*for the purpose of* passing" material, displaying a sign, or "engaging in oral protest, education, or counseling." Laws of Westchester County § 425.31(*i*) (emphasis added). If the speaker approaches for another purpose, it is permitted.

85. A law is also facially content-based if enforcement authorities must "examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen*, 573 U.S. at 479 (internal quotation marks omitted). The Sidewalk Counseling Ban requires that. The only way to determine if an approach was

19

"for the purpose of … protest, education, or counseling" is to examine whether the speaker's message includes protest, education, or counseling.

86. Even if the Sidewalk Counseling Ban were facially content-neutral, it would still be content-based under the second part of *Reed*'s disjunctive test.

87. The interest purportedly justifying laws like the Sidewalk Counseling Ban is protecting abortion-clinic patients from the alleged harms of encountering pro-life speech. But a law is content-based if it is "concerned with [the] undesirable effects" of speech on its audience or "listeners' reactions to speech." *McCullen*, 573 U.S. at 481.

88. The Sidewalk Counseling Ban therefore triggers strict scrutiny—a "demanding standard." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). "It is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000).

89. The Sidewalk Counseling Ban cannot survive strict scrutiny.

90. To the extent the interest underlying the Sidewalk Counseling Ban is insulating women entering abortion clinics from hearing pro-life viewpoints, that interest is not even legitimate, much less compelling. In a public forum, the government may not "selectively … shield the public from some kinds of speech on the ground that they are more offensive than others." *McCullen*, 573 U.S. at 477.

91. To the extent the interests underlying the Sidewalk Counseling Ban are protecting access to abortion clinics and guarding against harassment and violence, the ban is not narrowly tailored to achieving those interests.

**App.20**

92. Under *McCullen*, a speech regulation allegedly advancing these interests fails even *intermediate* scrutiny if the government has at its disposal other options aimed at promoting them—such as direct prohibitions on "obstruct[ing] … entry," "in-jur[ing]" or "intimidat[ing]" patients or workers, and "follow[ing] and harass[ing]" near clinics. 573 U.S. at 490-94.

93. Here, other provisions of the very law containing the Sidewalk Counseling Ban address those interests.

94. In subsections (a)-(h), the law prohibits obstructing access to abortion clinics; violence and any other unwanted physical contact near abortion clinics; following and harassing people near abortion clinics; threats and intimidation of abortion-clinic patients and employees; physically damaging abortion clinics; and "interfer[ing] with" (or attempting to interfere with) an abortion clinic's operations.

95. The federal FACE Act and its New York analogue likewise criminalize obstructing access to abortion clinics, and New York has generally applicable laws forbidding, *inter alia*, assault, harassment, disorderly conduct, and trespass. *See supra* ¶ 63.

96. In light of this multitude of other prohibitions, the only *additional* function served by the Sidewalk Counseling Ban is prohibiting peaceful, non-threatening, non-harassing speech engaged in at the only range at which it is likely to be effective—which strikes "at the heart of the First Amendment." *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 377 (1997).

**App.21**

97. For the same reasons, even if the Sidewalk Counseling Ban were content-neutral, it would still be unconstitutional, because it is not narrowly tailored to serve significant governmental interests.

98. Although the Supreme Court upheld a materially identical ban on sidewalk counseling in *Hill*, *Hill* is wrongly decided, irreconcilable with *McCullen* and *Reed*, and should be overruled by the Supreme Court.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court:

a. Declare that the Sidewalk Counseling Ban, Laws of Westchester County § 425.31(*i*), violates the Free Speech Clause of the First Amendment to the United States Constitution;

b. Issue a permanent injunction prohibiting Defendants, Defendants' agents and employees, and all those acting in concert with Defendants, from enforcing the Sidewalk Counseling Ban, Laws of Westchester County § 425.31(*i*);

c. Issue a permanent injunction prohibiting Defendants, Defendants' agents and employees, and all those acting in concert with Defendants, from penalizing Plaintiff for exercising her First Amendment right to engage in sidewalk counseling at an abortion clinic;

d. Award Plaintiff compensatory damages for the harm suffered as a result of Defendants' deprivation of her constitutional rights;

e. Award Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

f. Award Plaintiff nominal damages;

g. Award such other relief as the Court may deem equitable, just, and proper.

## JURY REQUEST/DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 1st day of November, 2022.

/s/ Daniel M. Vitagliano

Daniel M. Vitagliano*
 S.D.N.Y. Bar No. 5856703
Mark L. Rienzi**
 D.C. Bar No. 494336
Joseph C. Davis**
 D.C. Bar No. 1047629
The Becket Fund for Religious Liberty
 1919 Pennsylvania Ave, N.W.
Suite 400
Washington, D.C. 20006
(202) 955-0095
dvitagliano@becketlaw.org

*Not admitted to the D.C. Bar; admitted to the Bar of the State of New York; practice limited to U.S. courts; supervised by licensed D.C. Bar members

**Applications for admission *pro hac vice* forthcoming

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DEBRA A. VITAGLIANO,

    *Plaintiff,*

  v.

COUNTY OF WESTCHESTER;

GEORGE LATIMER, in his official capacity as County Executive of the County of Westchester;

– and –

JOHN M. NONNA, in his official capacity as County Attorney of the County of Westchester,

    *Defendants*.

Case No.  7:22-cv-09370
[rel 7:22-cv-06950]

## STIPULATION AND JOINT RULE 21 MOTION TO DROP PARTIES

Plaintiff Debra Vitagliano and Defendants County of Westchester; George Latimer, sued in his official capacity as County Executive; and John Nonna, sued in his official capacity as County Attorney, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 21, to drop Defendants Latimer and Nonna from this action and to amend the case caption accordingly.

Under Federal Rule of Civil Procedure 21, on motion or *sua sponte*, "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

Here, the parties stipulate and agree that Defendants Latimer and Nonna, as County officials, and any successors of their respective offices, will be bound by and

**App.24**

subject to any injunction or declaratory judgment Plaintiff obtains against the County in this action.

The parties further stipulate and agree that Defendants Latimer and Nonna's absence as parties does not prejudice in any way Plaintiff's ability to obtain the relief sought in her complaint, should she prevail in this litigation.

Rule 21 "affords courts discretion to shape litigation in the interests of efficiency and justice." *Lee v. Orange Cnty. Jail (Admin.)*, 7:20-CV-5021 (PMH), 2020 WL 5026554, at *1 (S.D.N.Y. Aug. 25, 2020); *see also City of Syracuse v. Onondaga County*, 464 F.3d 297, 308 (2d Cir. 2006) ("District Courts have broad discretion to drop or add parties under Rule 21 when doing so would serve the ends of justice and further the prompt and efficient disposition of the litigation." (cleaned up)).

The parties agree that dropping Defendants Latimer and Nonna serves judicial economy and furthers prompt, efficient resolution of this case. Accordingly, and in light of the stipulations stated above, the parties respectfully move the Court to drop Defendants Latimer and Nonna and to amend the case caption accordingly.

[SIGNATURES ON NEXT PAGE]

**App.25**

Respectfully submitted this 7th day of December, 2022.

/s/ Mark L. Rienzi
Mark L. Rienzi
Joseph C. Davis
Daniel L. Chen*
Daniel M. Vitagliano**
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave., N.W.
  Suite 400
Washington, D.C. 20006
(202) 955-0095
mrienzi@becketlaw.org

*Counsel for Plaintiff Debra A.*
*Vitagliano*

*Application for admission *pro hac*
*vice* pending

**Not admitted to the D.C. Bar; ad-
mitted to the New York Bar; super-
vised by licensed D.C. Bar members

/s/ John M. Nonna
John M. Nonna
Justin R. Adin
Shawna C. MacLeod
Alida L. Marcos
Westchester County Attorney
Michaelian Office Building
148 Martine Ave., 6th Floor
White Plains, N.Y. 10601
(914) 995-2690
jmn5@westchestergov.com

*Counsel for Defendants County of*
*Westchester, George Latimer, and*
*John M. Nonna*

**App.26**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DEBRA A. VITAGLIANO,

     *Plaintiff,*

  v.

COUNTY OF WESTCHESTER;

GEORGE LATIMER, in his official
capacity as County Executive of the
County of Westchester;

– and –

JOHN M. NONNA, in his official capacity
as County Attorney of the County of
Westchester,

     *Defendants.*

Case No. 7:22-cv-09370
[rel 7:22-cv-06950]

**[PROPOSED] ORDER
GRANTING JOINT RULE 21
MOTION TO DROP PARTIES**

PHILIP M. HALPERN, District Judge:

    The parties have filed a Joint Rule 21 Motion to Drop Defendants George Latimer

and John M. Nonna, sued in their official capacities, from the case. For the reasons

stated therein, the motion is GRANTED.

    The Clerk of Court is respectfully directed to drop, under Federal Rule of Civil

Procedure 21, Defendants George Latimer and John M. Nonna from the case and to

amend the case caption accordingly.

**So Ordered.**

Dated: _____

       White Plains, New York

_____
The Honorable Philip M. Halpern
United States District Judge

**App.27**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DEBRA A. VITAGLIANO, | Case No. 7:22-cv-09370 |
| *Plaintiff,* | [rel 7:22-cv-06950] |
| v. |  |
| COUNTY OF WESTCHESTER; | **[PROPOSED] ORDER** |
|  | **GRANTING JOINT RULE 21** |
| GEORGE LATIMER, in his official | **MOTION TO DROP PARTIES** |
| capacity as County Executive of the |  |
| County of Westchester; |  |
| – and – |  |
| JOHN M. NONNA, in his official capacity |  |
| as County Attorney of the County of |  |
| Westchester, |  |
| *Defendants.* |  |

PHILIP M. HALPERN, United States District Judge:

The parties have filed a Joint Rule 21 Motion to Drop Defendants George Latimer and John M. Nonna, sued in their official capacities, from the case. (Doc. 25). For the reasons stated therein, the motion is GRANTED.

The Clerk of Court is respectfully directed to drop, under Federal Rule of Civil Procedure 21, Defendants George Latimer and John M. Nonna from the case and to amend the case caption accordingly.

**SO ORDERED.**

Dated: White Plains, New York
     December 8, 2022

_____
Honorable Philip M. Halpern
United States District Judge

**App.28**



**George Latimer**
**County Executive**

**John M. Nonna**
**County Attorney**

December 16, 2022

Hon. Philip M. Halpern, U.S.D.J.
The Hon. Charles L. Brieant Jr.
Federal Building and Courthouse
300 Quarropas Street, Room 530
White Plains, NY 10601
*Via ECF*

Re:     *Vitagliano v. County of Westchester, et al.*, 22-cv-09370 (PMH)
        Related Case: *Doe, et al. v. County of Westchester, et al.*, 22-cv-06950 (PMH)

Dear Judge Halpern:

I am the County Attorney for the County of Westchester, counsel for Defendant in the above-referenced action (as well as in the related case). I write, pursuant to Your Honor's Individual Rule of Practice 4(C), to request a pre-motion conference in anticipation of filing a motion to dismiss in this action.

In this action, Plaintiff's sole claim is that Section 425.31(i)'s eight-foot no-approach zone is unconstitutional.[1] As Plaintiff herself recognizes, however, this section is modeled after, and nearly identical to, the Colorado statute upheld by the U.S. Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000). The statute at issue in *Hill* created a 100-foot buffer zone around entrances to all healthcare facilities, in which a person could not knowingly approach within eight feet of another person, without that person's consent, for the purpose of "passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person." *Id.* at 707 & n.1. The *Hill*

---

[1] This differs from the related case where plaintiffs are challenging a multitude of provisions in the County's law.

Plaintiffs were anti-abortion "sidewalk counselors"—just as Plaintiff alleges she intends to be—who argued, as Plaintiff does here, that the law was content-based because it specifically regulated "oral protest, education, or counseling." The Supreme Court rejected that challenge, holding that the law was a narrowly tailored content-neutral time, place, and manner restriction. *Id.* at 724-735.

*Hill* is directly on point and binding here, and remains controlling precedent unless and until the Supreme Court overturns it. *See, e.g., United States v. Quinones*, 313 F.3d 49, 69 (2002) (explaining that U.S. Circuit Courts must adhere to U.S. Supreme Court precedent); *see also Price v. City of Chi.*, 915 F.3d 1107 (7th Cir. 2019) (relying on *Hill* in upholding a Chicago bubble-zone ordinance). The Plaintiff in this action apparently concedes as much, asserting that *Hill* was wrongly decided and should be overruled by the Supreme Court. *See* Compl. ¶¶ 6-7, 98. Moreover, the Supreme Court's decisions in *Reed* and *McCullen* do not abrogate *Hill's* core holding, despite the Complaint's allegations to the contrary (*see* Compl. ¶¶ 74-77, 98).

In any event, Plaintiff vastly overstates the effect of section 425.31(i). What Plaintiff dubs a total "prohibition" on certain types of speech is simply not one. Oral protest, education, and counseling are clearly allowed by Section 425.31(i), as long as they are not done while approaching within eight feet of an individual who has not provided consent. Individuals can easily hear conversational voices and view signs from eight feet away. *See Hill*, 530 U.S. at 729. People may also choose to stand close to the entrances of reproductive health care facilities and, without physically approaching individuals entering the facility, offer leaflets—even from a few inches away. *See id.* at 729-30.

Pursuant to Your Honor's Individual Rules, Defendant served Plaintiff with a letter on December 5, 2022 setting forth, *inter alia*, the deficiencies in the claim identified above. On December 9, 2022, Plaintiff responded, conceding that *Hill* is controlling and binding, and stating that Plaintiff would not amend. In other words, Plaintiff concedes that there is no legal basis for bringing this claim,

other than her disagreement with settled Supreme Court precedent, making this action ripe for dismissal. Thus, Defendant requests a pre-motion conference in anticipation of a motion to dismiss.

Thank you for your consideration of this matter.

Respectfully submitted,

/s/ *John M. Nonna*

John M. Nonna
County Attorney



1919 Pennsylvania Ave. NW, Suite 400
Washington, D.C. 20006
202-955-0095 / 🐦 @BecketLaw
www.becketlaw.org

December 21, 2022

*VIA ECF*

Hon. Philip M. Halpern, U.S.D.J.
U.S. District Court for the Southern District of New York
Hon. Charles L. Brieant Jr.
Federal Building and U.S. Courthouse
300 Quarropas St., Room 530
White Plains, NY 10601

**Re:** ***Vitagliano v. County of Westchester*, 7:22–cv–09370 (PMH)**
     **Rel. *Hulinsky v. County of Westchester*, 7:22–cv–06950 (PMH)**

Dear Judge Halpern,

We represent Plaintiff Debra Vitagliano in the above-captioned matter. We write, pursuant to the Court's Individual Practices in Civil Cases ¶¶ 2.C, 4.C, in response to the County's letter requesting a pre-motion conference in connection with its anticipated motion to dismiss. Dkt. 28.

As the County notes, § 425.31(*i*) is modeled after the law upheld in *Hill v. Colorado*, 530 U.S. 703 (2000). *See* Dkt. 1 ¶¶ 6, 67, 98. Plaintiff acknowledges that "[*Hill*] remains on the books and directly controls here." *Price v. City of Chicago*, 915 F.3d 1107, 1119 (7th Cir. 2019) (affirming 12(b)(6) dismissal of challenge to similar law under *Hill*). Plaintiff's position is that *Hill* was wrongly decided, is irreconcilable with intervening precedent, and should be overruled by the Supreme Court.

Section 425.31(*i*) makes it illegal, within 100 feet of an abortion clinic, to "knowingly approach" within eight feet of another person "for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person," "unless such other person consents." In *Hill*,

**App.32**



the Supreme Court upheld a materially identical law against a Speech Clause challenge. Yet in doing so, it "distorted First Amendment doctrines." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2276 & n.65 (2022). And *Hill*'s reasoning has been repudiated by the intervening precedents of *Reed* and *McCullen*—as explained in detail in our complaint, Dkt. 1 ¶¶ 67-78, by the Seventh Circuit in *Price*, and by Justice Thomas's dissenting opinion in *City of Austin v. Reagan National Advertising of Austin, LLC*, 142 S. Ct. 1464, 1481, 1484, 1490-92 (2022) (Thomas, J., joined by Gorsuch and Barrett, JJ., dissenting).

The County says "*Reed* and *McCullen* do not abrogate *Hill*'s core holding" but does not elaborate on this assertion. If the County means to say only that this Court remains bound by *Hill* until the Supreme Court formally overrules it, Plaintiff agrees. *See, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 237-38 (1997). But if it means to suggest that *Hill* is somehow reconcilable with *Reed* and *McCullen*, it is incorrect—and this Court shouldn't hesitate to recognize as much in ruling on the County's motion. *See generally Price*, 915 F.3d 1107.

Indeed, in committee hearings leading to § 425.31(*i*)'s passage, the County Attorney cited *Price* and *City of Austin*'s "dissent excoriating *Hill*," warned that "[i]f this legislation … ever got [to the Supreme Court], I have real questions," and stated that "I think we know what the Supreme Court would rule if this ever got there," "so hopefully our legislation never gets to the Supreme Court." Joint Meeting of the Westchester County Legislature Committees on Health and Legislation, at 39:55-40:39, 1:53:11-1:53:17 (June 1, 2022), https://tinyurl.com/dxjv55hw; *see Goe v. Zucker*, 43

**App.33**



F.4th 19, 29 (2d Cir. 2022) ("courts may take judicial notice of legislative history" in ruling on motion to dismiss).

But for *Hill*, the First Amendment analysis here would be straightforward. Laws that restrict speech based on "its communicative content" trigger strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). This standard is demanding—it requires the law to "further[] a compelling governmental interest and [be] narrowly tailored to that end." *Id.* at 171.

Section 425.31(*i*) is content-based, since whether the "approach" ban applies depends on what the speaker intends to say when she arrives. If she intends to "pass[] any material," display a sign, or "engag[e] in oral protest, education, or counseling," § 425.31(*i*), she has committed an offense. If she approaches to engage in speech for another purpose—for example, to ask for the time, for directions, or for a bus fare—it is permitted.

And the law cannot survive even intermediate—much less strict—scrutiny, because the County has numerous options for promoting clinic safety and access "without substantially burdening [Plaintiff's] speech." *McCullen v. Coakley*, 573 U.S. 464, 490 (2014). Indeed, other subsections of the *same law* prohibit, *e.g.*, obstructing access to abortion clinics; violence and other unwanted physical contact near clinics; following and harassing people near clinics; threats and intimidation of patients and employees; physically damaging clinics; and "interfer[ing]" (or attempting to interfere) with clinic operations. § 425.31(a)-(h); *see also* Dkt. 1 ¶¶ 63, 95 (collecting other applicable laws). All § 425.31(*i*) *adds* is a prohibition on peaceful, pro-life speech.

**App.34**



\*　　\*　　\*

Nonetheless, Plaintiff agrees that, for now, *Hill* remains binding on this Court and forecloses her claims. In the interest of judicial economy, this Court may therefore wish to dispense with formal briefing, treat Defendant's pre-motion letter as the motion, and dispose of it. *See* Individual Practices in Civil Cases ¶ 2.C. Alternatively, Plaintiff welcomes the opportunity to discuss this further at a pre-motion conference.

Plaintiff thanks the Court for its attention to this matter.

Respectfully submitted,

Mark L. Rienzi
Joseph C. Davis
Daniel L. Chen
Daniel M. Vitagliano
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Ste. 400
Washington, D.C. 20006
mrienzi@becketlaw.org

*Counsel for Plaintiff*

**App.35**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBRA A. VITAGLIANO,

                Plaintiff,

     -against-

COUNTY OF WESTCHESTER,

                Defendant.

**MEMORANDUM
<u>OPINION AND ORDER</u>**

22-CV-09370 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Debra A. Vitagliano ("Plaintiff") commenced this case on November 1, 2022 against the County of Westchester ("County" or "Defendant"). (Doc. 1, "Compl."). Plaintiff asserts a single claim for relief under 42 U.S.C. § 1983, alleging that Westchester County Law § 425(i) violates the First Amendment of the U.S. Constitution. (Compl. ¶¶ 79-98). Defendant filed a pre-motion conference letter in anticipation of its motion to dismiss on December 16, 2022, arguing that Plaintiff's claim is foreclosed by the Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000). (Doc. 28). Plaintiff responded on December 21, 2022, conceding that "*Hill* remains binding on this Court and forecloses [Plaintiff's] claims" and requesting that the Court "treat Defendant's pre-motion letter as the motion, and dispose of [this case]" (Doc. 29 at 4).

Accordingly, the Court waives its pre-motion conference requirement, construes Defendant's pre-motion letter as its motion, and GRANTS the motion to dismiss for the reasons set forth below. *See Brown v. New York*, 2022 WL 221343, at *2 (2d Cir. Jan. 26, 2022); *StreetEasy, Inc. v. Chertok*, 730 F. App'x 4, 6 (2d Cir. 2018) (holding that the district court "acted within its discretion" in deeming a pre-conference letter as the party's motion and denying it when "the parties offered detailed arguments in pre-motion letters that evidenced the clear lack of merit in [the] contemplated motion"); *In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011)

("Given the length and detail of the Pre-motion Letter and responses, and the clear lack of merit of the sanctions argument, the district court did not abuse its discretion in construing the letter as a motion and denying the motion.").

## **<u>BACKGROUND</u>**

Westchester County Law § 425.31(i) makes it unlawful for any person to:

> knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way within a radius of one-hundred (100) feet from any door to a reproductive health care facility.

Westchester Cnty. Law § 425.31(i) ("Buffer Zone Provision"). "Approach" is defined as "to move nearer in distance to someone." *Id.* § 425.21(a). "Reproductive health care facility" is defined as "any building, structure, or place, or any portion thereof, at which licensed, certified, or otherwise legally authorized persons provide reproductive health care services," and "reproductive health care services" is in turn defined to include "services relating to pregnancy or the termination of a pregnancy." *Id.* § 425.21(k)-(l). Violations of the Buffer Zone Provision are misdemeanors punishable by fines and imprisonment. *Id.* § 425.41(a)-(b). The statute authorizes civil actions by abortion clinics, abortion-clinic employees, and their invitees related to violations of the Buffer Zone Provision, and further authorizes civil enforcement actions by the Westchester County Attorney "for injunctive and other appropriate equitable relief in order to prevent or cure a violation." *Id.* §§ 425.51, 425.61.

In February 2021, Plaintiff began participating in "prayer vigils, where she would stand and peacefully pray on the sidewalk and other portions of the public way outside the White Plains Planned Parenthood." (Compl. ¶ 26). Plaintiff does not currently—nor has she ever—participated in "sidewalk counseling," a practice that violates the Buffer Zone Provision wherein individuals

2

"approach[] women on their way into Planned Parenthood[,]" in order to speak with them and distribute pamphlets and other literature. (*Id.* ¶ 27). Plaintiff alleges that while she "felt called to engage in sidewalk counseling" (*id.* ¶ 28) she has never done so because "she felt she first needed proper training" (*id.* ¶ 29). Plaintiff alleges that she continues to refrain from engaging in sidewalk counseling, "[d]espite her earnest desire" to do so, "because of the [Buffer Zone Provision]." (*Id.* ¶ 64). She alleges that "[b]ut for the [Buffer Zone Provision], Plaintiff would engage in sidewalk counseling." (*Id.* ¶ 65). Plaintiff further alleges that she will be "irreparably harmed" by the Buffer Zone Provision "because of the chilling of her constitutionally protected speech." (*Id.* ¶ 66).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*. at 679. The presumption of truth "is inapplicable to legal conclusions[,]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

3

## ANALYSIS

I.     Article III Standing

"'[I]t is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject-matter jurisdiction.'" *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative"); *Marom v. Town of Greenburgh*, No. 20-CV-03486, 2021 WL 797648, at *4 (S.D.N.Y. Mar. 2, 2021) (dismissing claims for want of subject-matter jurisdiction *sua sponte* pursuant to the Court's "inherent authority to evaluate the existence of subject-matter jurisdiction under Rule 12(h)(3)").

"[C]onstitutional ripeness" can be seen "as a specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). "Constitutional ripeness, in other words, is really just about the first *Lujan* factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (setting forth the various factors for courts to consider in determining constitutional standing)). Pre-enforcement First Amendment claims, such as the one Plaintiff brings here, are assessed "under somewhat relaxed standing and ripeness rules." *Id.* at 689. Nevertheless, "[a] plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Id.* (citing *Laird v. Tatum,* 408

4

U.S. 1, 13-14 (1972)). A plaintiff must allege "a real and imminent fear of such chilling" to satisfy Article III standing. *Id.*; *see also Kounitz v. Slaatten*, 901 F. Supp. 650, 654 (S.D.N.Y. 1995) (holding that the plaintiff failed to allege an injury in fact because he asserted "in the most general fashion" that he had been "chilled in the exercise of his First Amendment rights").

Plaintiff admits in her Complaint that she has never engaged in sidewalk counseling. (Compl. ¶ 29). Although Plaintiff alleges that she has an "earnest desire to engage in sidewalk counseling" she does not allege any concrete plans to do so at any point in the future. (*Id.* ¶ 64). Plaintiff has only alleged, "in the most general fashion," that that her exercise of free speech has been chilled by the enactment of the Buffer Zone Provision. This is distinguishable from the facts the Second Circuit considered in *Walsh.* 714 F.3d 682 (2d Cir. 2013). There, the plaintiff brought a pre-enforcement action challenging a New York statute regarding the designation of certain entities as "political committees" and argued that such designation would chill its right to distribute certain advertisements. *Id.* The plaintiff in *Walsh* attached to its complaint "several advertisements it wanted to broadcast *immediately*, not in the future." *Id.* at 691 (emphasis in original). In assessing ripeness, the Second Circuit noted that the advertisements that the plaintiff sought to immediately broadcast showed that its speech had been chilled and that "[f]or ripeness purposes, [plaintiff's] future plans are of less relevance." *Id.* Here, Plaintiff has no concrete plans, either in the immediate-term or in the future, to engage in sidewalk counseling. Plaintiff's concerns regarding the Buffer Zone Provision amount to nothing more than "abstract, subjective fear[s] that h[er] rights are chilled" and cannot therefore serve as the basis for Article III standing. *Id.* at 688. Indeed, Plaintiff mentions that she would need "proper training" before she would even consider sidewalk counseling. (Compl. ¶ 29).

Accordingly, the Complaint is dismissed for failure to establish Article III standing.

**App.40**

II.    *Hill v. Colorado*

Even if Plaintiff had established Article III standing, which she has not, her action is foreclosed by directly relevant Supreme Court precedent. The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. Amend. I. Under that Clause, a government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). The Supreme Court has also recognized "a separate and additional category of laws that, though facially content neutral, will be considered content-based regulation of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys'" *Id.* (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989)). "[A]bsent a content-based purpose or justification," a content-neutral regulation "does not warrant the application of strict scrutiny." *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022).

As Plaintiff acknowledges, the Buffer Zone Provision is "materially identical" to the law the Supreme Court upheld in *Hill v. Colorado*, 530 U.S. 730 (2000). (Compl. ¶ 6). The statute at issue in *Hill* created a 100-foot buffer zone around entrances to all healthcare facilities, in which a person could not knowingly approach within eight feet of another person, without that person's consent, for the purpose of "passing a leaflet or handbill to, displaying a sign to, or engaging in

**App.41**

oral protest, education, or counseling with such other person." *Id.* at 707 & n.1. The *Hill* plaintiffs were anti-abortion activists engaged in sidewalk counseling who argued, just as Plaintiff does here, that the law was content-based because it regulated "oral protest, education, or counseling." *Id.* The Supreme Court rejected that argument and held that the law was content-neutral because "[i]t applies to all 'protest,' to all 'counseling,' and to all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision." *Id.* at 726.

Just like the law upheld in *Hill*, the Buffer Zone Provision "simply establishes a minor place restriction on an extremely broad category of communications with unwilling listeners." *Id.* at 723. The Buffer Zone Provision leaves open ample alternative channels of communication. Oral protest, education, and counsel are all allowed "as long as they are not done while approaching within eight feet of an individual who has not provided consent." (Doc. 28 at 2). People are free to distribute leaflets to approaching individuals if they "choose to stand close to the entrances of the reproductive health care facilities" so long as they do so "without physically approaching individuals entering the facility." (*Id.*). The Buffer Zone Provision is clearly narrowly tailored to advance Westchester County's significant governmental interest in protecting individuals attempting to enter health care facilities from "unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." *Hill*, 530 U.S. at 729.

Accordingly, the Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 730 (2000) forecloses Plaintiff's claims as a matter of law and provides a separate and independent basis for the dismissal of the Complaint.

### CONCLUSION

**App.42**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to (i) terminate the motion sequence pending at Doc. 28 and (ii) close this case.

**SO ORDERED.**

Dated:    White Plains, New York
           December 30, 2022

PHILIP M. HALPERN
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
DEBRA A. VITAGLIANO,

               Plaintiff,

      -against-                                 22 **CIVIL** 9370 (PMH)

                                            <u>**JUDGMENT**</u>

COUNTY OF WESTCHESTER,

               Defendant.
------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Memorandum Opinion and Order dated January 3, 2023, Defendant's motion

to dismiss is GRANTED; accordingly, the case is closed.

**Dated:** New York, New York

      January 3, 2023

                                   **RUBY J. KRAJICK**

                                  _____
                                   **Clerk of Court**

            **BY:**         K. Mango

                                   _____
                                    **Deputy Clerk**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBRA A. VITAGLIANO, | Case No. 7:22-cv-09370 |
| *Plaintiff,* | [rel 7:22-cv-06950] |
| v. | **NOTICE OF APPEAL** |
| COUNTY OF WESTCHESTER, | |
| *Defendant.* | |

Notice is hereby given that Debra A. Vitagliano, Plaintiff in the above-named case, appeals to the United States Court of Appeals for the Second Circuit from the memorandum opinion and order granting Defendant County of Westchester's motion to dismiss, Dkt. 31, and the judgment of this Court, Dkt. 32, entered January 3, 2023.

Respectfully submitted this 4th day of January, 2023.

/s/ Daniel M. Vitagliano
Daniel M. Vitagliano*
 S.D.N.Y. Bar No. 5856703
Mark L. Rienzi**
Joseph C. Davis**
Daniel L. Chen**
The Becket Fund for Religious Liberty
 1919 Pennsylvania Ave, N.W.
Suite 400
Washington, D.C. 20006
(202) 955-0095
dvitagliano@becketlaw.org

*Not admitted to the D.C. Bar; admitted to the N.Y. Bar; supervised by licensed D.C. Bar members

**Admitted *pro hac vice*

*Attorneys for Plaintiff*
