# 23-30

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

DEBRA A. VITAGLIANO

*Plaintiff-Appellant,*

v.

COUNTY OF WESTCHESTER,

*Defendant-Appellee.*

Appeal from the United States District Court for the Southern District of New York (Halpern, *J.*), No. 7:22-cv-9370

## BRIEF OF AMICI CURIAE ELEANOR McCULLEN IN SUPPORT OF APPELLANT DEBRA A. VITAGLIANO

Edward M. Wenger
Caleb B. Acker
Andrew B. Pardue*
HOLTZMAN VOGEL BARAN
 TORCHINSKY & JOSEFIAK PLLC
2300 N ST, N.W., Suite 643
Washington, DC 20037
Phone: (540) 341-8808
Fax: (540) 341-8809
emwenger@holtzmanvogel.com

* Not admitted to the D.C. bar; supervised by licensed D.C. Bar members

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

IDENTITY AND INTEREST OF AMICUS CURIAE.............................................1

SUMMARY OF THE ARGUMENT .......................................................................3

ARGUMENT .............................................................................................................4

    I.    SIDEWALK COUNSELORS LIKE MRS. MCCULLEN AND APPELLANT SHOULD HAVE THEIR FIRST AMENDMENT RIGHTS VINDICATED UNDER THE SUPREME COURT'S MODERN PRECEDENTS RATHER THAN *HILL V. COLORADO*. ...................................................................................4

        A.    Sidewalk counselors like Appellant and Mrs. McCullen have a long and fruitful history of engaging in specific, purpose-driven communication to transform lives.................................................4

        B.    *City of Austin* held that regulations singling out speech on a specific subject matter for differential treatment are content-based, as guided by history and tradition. ...................................10

        C.    Regulations like those in Westchester County and Colorado single out sidewalk counseling—speech on a specific subject matter—for differential treatment and so cannot be squared with *City of Austin*. ....................................................................................11

CONCLUSION........................................................................................................14

CERTIFICATE OF COMPLIANCE......................................................................15

CERTIFICATE OF SERVICE................................................................................16

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                      **Page(s)**

*City of Austin v. Reagan Nat'l Advert. of Austin, L.L.C.*,
  142 S. Ct. 1464 (2022) .................................................................... 10, 11, 13

*Dobbs v. Jackson Women's Health Org.*,
  142 S. Ct. 2228 (2022) ................................................................................ 13

*Hill v. Colo.*,
  530 U.S. 703 (2000) ........................................................................ 4, 10, 12

*McCullen v. Coakley*,
  573 U.S. 464 (2014) .......................................................................... *passim*

*McCullen v. Coakley*,
  573 U.S. 464 (2014) (No. 12-1168) .............................................................. 6

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) .................................................................................. 3, 9

*Meyer v. Grant*,
  486 U.S. 414 (1988) .................................................................................. 3, 9

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*,
  377 F. Supp. 3d 670 (W.D. Tex. 2019) ....................................................... 11

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ............................................................................. 3-4, 10

*Schenck v. Pro-Choice Network of W.N.Y.*,
  519 U.S. 357 (1997) ...................................................................................... 9

*Stanley v. Georgia*,
  394 U.S. 557 (1969) ...................................................................................... 9

*Under Austin v. Reagan Nat'l Advert. of Austin, L.L.C.*,
  142 S. Ct. 1464 (2022) .................................................................................. 3

*United States v. Grace*,
   461 U.S. 171 (1983) ............................................................................... 3

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ............................................................................. 10

**Statutes**

Colo. Rev. Stat. § 18-9-122(3) ................................................................. 12

**Other**

Fed. R. App. P. 29(a)(2) ............................................................................ 1
Fed. R. App. P. 32(a)(5) .......................................................................... 15
Fed. R. App. P. 32(a)(6) .......................................................................... 15
Fed. R. App. P. 32(a)(f) ........................................................................... 15
Fed. R. App. P. 32(g)(1) .......................................................................... 15
Fed. R. App. P. 32.1 ................................................................................ 15
Laws of Westchester County § 425.31(i) ............................................... 12

# **IDENTITY AND INTEREST OF AMICUS CURIAE**[1]

Eleanor McCullen was the lead petitioner in *McCullen v. Coakley*, 573 U.S. 464 (2014). When she filed her petition for a writ of certiorari, she was spending her Tuesdays and Wednesdays helping women outside a Planned Parenthood clinic. In addition to offering messages of love and support to women footsteps away from terminating a pregnancy, Mrs. McCullen and her husband have spent thousands of dollars of their own money to pay for baby showers, lodging, utilities, food, diapers, and more for women in need who choose to have their babies.

Mrs. McCullen believes that every human life, from the child in the womb to the woman dealing with a crisis pregnancy, is precious and worthy of dignity, respect, love, and protection. That is why she has devoted her time to sidewalk counseling, and that is why she petitioned the Supreme Court one decade ago to protect her First Amendment right to do so. As another sidewalk counselor appeals her own case to this Court to ensure her First Amendment right to express her message of hope to women facing perhaps the most profoundly difficult decision of their lives, Mrs. McCullen, now *amicus curiae*, offers the following to crystallize

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), counsel for the appellant has provided consent to the filing of this amicus brief. Counsel for the appellee opposes the filing of this amicus brief. No party's counsel authored this brief in whole or in part, and no one besides amicus curiae and its counsel contributed money to fund the brief's preparation or submission.

the exceptional burdens that laws restricting speech outside abortion clinics continue to inflict on sidewalk counselors.

## **SUMMARY OF THE ARGUMENT**

In *McCullen*, the Supreme Court recognized that sidewalk counselors are not abortion protestors. 573 U.S. at 472. And it unanimously concluded that prophylactic restrictions on speech outside abortion clinics violate the First Amendment by choking off sidewalk counselors' expressions of support to women who are open to information about abortion alternatives. *Id.* at 496–97. The Court returned to several foundational tenets of First Amendment law. These include the principles that traditional public fora, especially streets and sidewalks, are enshrined with a "special position in terms of First Amendment protection," *United States v. Grace*, 461 U.S. 171, 180 (1983); that "one-on-one communication" is "the most effective, fundamental, and perhaps economical avenue of political discourse," *Meyer v. Grant*, 486 U.S. 414, 424 (1988); and that "handing out leaflets in the advocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression," *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). Sidewalk counseling, then, has "historically been more closely associated with the transmission of ideas than" other types of speech. *McCullen*, 573 U.S. at 488.

Sidewalk counseling is speech concerning a very specific and personal subject matter, as Mrs. McCullen can attest. Regulations like the one in this case single out sidewalk counseling for differential treatment. Under *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464 (2022), and *Reed v. Town of Gilbert*, 576

3

U.S. 155 (2015), such regulations are content-based and should face strict scrutiny. The holding of *Hill v. Colorado*, 530 U.S. 703 (2000), to the contrary must therefore be overturned.

The need for *Hill*'s end is aptly described in Appellant's opening brief. *See* Opening Brief of Appellant at 35–45, *Vitagliano v. County of Westchester*, No. 23-30 (2d Cir. Feb. 24, 2023). Supplementing those points, Mrs. McCullen offers the following not only to underscore why she brought her case to the Supreme Court in 2013 but also to emphasize the unique peril inflicted by laws like the one at issue here on those who adhere to the view that, "[w]hen the conduct of men is designed to be influenced, persuasion, kind, unassuming persuasion, should ever be adopted." *The Collected Works of Abraham Lincoln* 273 (Wildside Press 2008).

## ARGUMENT

**I.     SIDEWALK COUNSELORS LIKE MRS. MCCULLEN AND APPELLANT SHOULD HAVE THEIR FIRST AMENDMENT RIGHTS VINDICATED UNDER THE SUPREME COURT'S MODERN PRECEDENTS RATHER THAN *HILL V. COLORADO*.**

**A.     Sidewalk counselors like Appellant and Mrs. McCullen have a long and fruitful history of engaging in specific, purpose-driven communication to transform lives.**

As Justice Scalia observed in his *Hill v. Colorado* dissent, the public areas outside of facilities providing abortions have evolved into "a forum of last resort" in the pro-life/pro-choice debate. *See* 530 U.S. at 763 (Scalia, J., dissenting). Among those contributing to this marketplace of ideas are the abortion facility employees

4

who, naturally, offer speech "in favor of the clinic and its work." *McCullen*, 573 U.S. at 512 (Alito, J., concurring in the judgment). There are also the "protestors, who express their moral or religious opposition to abortion through signs and chants or, in some cases, more aggressive methods such as face-to-face confrontation." *Id*. at 472 (majority opinion).

Then, there are the sidewalk counselors—those who "take a different tack." *Id*. They do not shout slogans over bullhorns, don provocative t-shirts, trot out inflammatory signs, or block entryways to abortion clinics. Although they believe that abortion ends the life of a human child, their approach shares little resemblance with those "fairly described as protestors." *Id*. In lieu of a bellow, sidewalk counselors believe that a message of hope and love, expressed through gentle, intimate conversation, carries far more power than any criticism or condemnation ever could.

Their message, distilled to its core, is one of respect and dignity not only for the life of the unborn but also for the woman deciding whether to carry her baby to term. They steadfastly believe that many women choose to end a pregnancy because of fear, pressure, isolation, and the mistaken assumption that they have no other choice. As Mrs. McCullen explained to the Supreme Court once before, her approach throughout her years as a sidewalk counselor was to "engage women who may be seeking abortions in close, kind, personal communication with a calm voice,

caring demeanor, and eye contact." Petition for Writ of Certiorari at 11, *McCullen v. Coakley*, 573 U.S. 464 (2014) (No. 12-1168).

This approach works. By offering a hand instead of a holler, Mrs. McCullen has helped scores of women (approximately eighty by the time of her case before the Court) "effectuate their own choice to pursue an alternative to abortion." *Id*. at 14. And she did so by stating the following:

- "Good morning."

- "Is there anything I can do for you?"

- "I'm available if you have any questions."

*McCullen*, 573 U.S. at 472. These exchanges often lead to lasting relationships between the women counseled and the sidewalk counselors. Mrs. McCullen, for example, often receives messages of appreciation from women who chose not to terminate their pregnancies, sometimes years after their encounters. The women frequently relay their pride and joy in their children's development. Mrs. McCullen has also, by request, been present during the birth of some of the children she helped save, and she is a proud godmother to others. Some women have chosen to name their children after her.

In Mrs. McCullen's case, a dozen women submitted a brief attesting to the positive and specific impact sidewalk counseling could have had in influencing their own abortion decisions. *See* Brief of 12 Women Who Attest to the Importance of

Free Speech in Their Abortion Decisions as *Amici Curiae* Supporting Petitioners, *McCullen v. Coakley*, 573 U.S. 464 (2014) (No. 12-1168).

There is one catch, however. The receptivity of this message depends entirely on the ability to engage with pregnant women in a close, quiet, intimate, personal manner. For sidewalk counselors, a calm voice is essential; eye contact is critical; openness from the recipient is non-negotiable. As the Supreme Court has already recognized, being "seen and heard by women within the buffer zones" is not enough. *McCullen*, 573 U.S. at 489 (internal quotation omitted). Because "[i]t is easier to ignore a strained voice or a waving hand than a direct greeting or an outstretched arm," allowing only the message expressed by "vociferous opponents of abortion" to be received "effectively stifle[s]" the sidewalk counselors' message. *Id.* at 490.

Before the Supreme Court intervened in her case, a Massachusetts buffer-zone law made it difficult, and sometimes impossible, for Mrs. McCullen to "distinguish patients from passersby outside the Boston clinic in time to initiate a conversation before they enter the buffer zone." *Id*. at 487. When she managed "to begin a discussion outside the zone, she" was forced to "stop abruptly at its painted border, which she believe[d] cause[d] her to appear 'untrustworthy' or 'suspicious.'" *Id*. For that reason, she was "often reduced to raising her voice at patients from outside the zone"—an approach anathema to the "compassionate message she wishe[d] to convey." *Id*.

7

Clear communication was vital for the women who wrote in support of Mrs. McCullen in 2013. Several of the women stated they needed information on the impact of abortions in their lives but were not provided that information by clinic personnel. Brief of 12 Women at 22, *McCullen*, 573 U.S. 464 (No. 12-1168). And several of the women asserted they would not have chosen to have an abortion had they received accurate information. *Id*. at 28. These stories of regret are a reminder of the communicative power of sidewalk counselors. Counselors like Mrs. McCullen calmly and kindly provide the accurate information so desperately needed by women coming to these clinics. The same burdens plague the Appellant in this case, a sidewalk counselor wishing to show compassion and offer assistance to women seeking services from Westchester's abortion clinics but who may have never been told that help is available.

Mrs. McCullen is not an abortion protestor. Neither is the Appellant in this case. Although they are both pro-life, they seek not to shout their pro-life message; rather, their goal is to inform pregnant women heading towards an abortion clinic that there is another way, that the other way is feasible, and that help is available. This communication remains susceptible to regulation that imposes distance. As the Court recognized in *McCullen*, and as it recognizes each time it protects the free expression rights of speakers who do not necessarily exhibit the same level of civility

8

demonstrated by Mrs. McCullen and the Appellant, the First Amendment demands more.

Appellant and Mrs. McCullen have not operated in a historical vacuum. The Supreme Court has long recognized the value of public speech like sidewalk counseling, that some forms of expression "such as normal conversation and leafletting on a public sidewalk . . . have historically been more closely associated with the transmission of ideas than others." *McCullen*, 573 U.S. at 488; *see also Meyer v. Grant*, 486 U.S. 414, 424 (1988) ("[O]ne-on-one communication" is "the most effective, fundamental, and perhaps economical avenue of political discourse"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) ("[H]anding out leaflets in the advocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression"); *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357, 377 (1997) ("Leafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment[.]"). So too the Court recognized long ago as "well established that the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). Both sidewalk counselors and the women with whom they communicate operate within a long-recognized sphere of strong constitutional protection. Meanwhile, on the regulatory side of the coin, cities and states have no analogous tradition endorsed by the courts of prohibiting sidewalk

9

counseling. *See* Opening Brief of Appellant at 56, *Vitagliano v. County of Westchester*, No. 23-30 (2d Cir. Feb. 24, 2023).

    **B.**    ***City of Austin* held that regulations singling out speech on a specific subject matter for differential treatment are content-based, as guided by history and tradition.**

In *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022), the Supreme Court reaffirmed *Reed v. Town of Gilbert*, 576 U. S. 155 (2015), and consciously avoided doing the same for *Hill*, *see City of Austin*, 142 S. Ct. at 1475. After *City of Austin* and *Reed*, the "principal inquiry in determining content neutrality" is not "whether the government has adopted a regulation of speech because of disagreement with the message it conveys[,]" *Hill*, 530 U.S. at 719 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)), but whether a regulation "'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin*, 142 S. Ct. at 1471 (quoting *Reed*, 576 U.S. at 163).

The regulations in *City of Austin* targeting "off-premises" signs—signs that advertised businesses, persons, products, or services "not located on the site where the sign is installed"—were content-neutral because they did not single out a topic, idea, message, or subject matter for differential treatment. *Id*. at 1472–73. The general location content—not the specific topic or subject matter content—of the signs were targeted. *Id*. The Court thus vindicated the district court in that case that

10

concluded a regulation of speech is not content-based if it does not "curtail discussion of any specific topics, ideas or viewpoints." *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 377 F. Supp. 3d 670, 681 (W.D. Tex. 2019).

Deciding when a regulation singles out subject matter, idea, or message is guided by inquiry into the "Nation's history of regulating" certain types of speech. *City of Austin*, 142 S. Ct. at 1474. A half-century of undisturbed and unbroken speech distinctions is good evidence that the First Amendment should permit such regulations. *Id*. at 1475.

**C.     Regulations like those in Westchester County and Colorado single out sidewalk counseling—speech on a specific subject matter—for differential treatment and so cannot be squared with *City of Austin*.**

Sidewalk counseling is speech on a specific subject matter. Sidewalk counseling is not just brimming with content; it is in its very essence about some of the most specific and important topics and matters for many American citizens. For example, Mrs. McCullen's close and personal communications with women on the sidewalk have discussed information about abortion and the options women in need have, as well as the emotions and pressures these women experience. *See supra* at 4–5. Sidewalk counseling, as done by Mrs. McCullen, is specific enough to have the power to change hearts and minds about abortion. *See* Brief of 12 Women at 28, *McCullen*, 573 U.S. 464 (No. 12-1168). Appellant likewise seeks to engage in the same type of speech on the same specific subject matter. *See* Opening Brief of

11

Appellant at 5–8, *Vitagliano v. County of Westchester*, No. 23-30 (2d Cir. Feb. 24, 2023). And no matter what kind of counseling, pro-life or otherwise, is being regulated, the regulations are unconstitutional.

The Westchester County law, modeled after the similar "bubble" zone regulation in Colorado, regulates speech where the content is protest, education, or counseling. *See* Laws of Westchester County § 425.31(*i*) (regulating "engaging in oral protest, education, or counseling"); *see also* Colo. Rev. Stat. § 18-9-122(3) (same). The Supreme Court in *Hill* regarded these types of laws as regulating "an extremely broad category of communications[,]" thereby rendering them content neutral. *Hill*, 530 U.S. at 723. This was and is wrong on its own terms. Counseling is speech on a very specific subject matter, and if Appellant or Mrs. McCullen approached a woman to engage in those close, personal, and specific communications, she would commit an offense under the regulation by "engaging in . . . counseling." And regulation in this present case applies only outside of "reproductive health care facilities," meaning necessarily that the "counseling" regulated is speech about abortion and pregnancy.

This is nothing like the broad location-based distinction in *City of Austin*. There, the general nature of regulating the off-premises signs did not deal with the specific subject matter of the advertisements themselves, or the idea or message expressed. The opposite is true for the regulation at issue here. The specific subject

12

matter of counseling (and education and protest) is the distinguishing mark of the speech being regulated, not, say, directing someone to a different location, like the signs in *City of Austin*.

And history lends confirmation, were there any doubt on this score. In *City of Austin*, the Court indicated that in close cases, one can determine whether a law discriminates based on idea, topic, or subject matter by looking to whether there is a long tradition of governments drawing a similar distinction. Here, any argument about the "Nation's history" of regulations of sidewalk counseling has no leg to stand on. *See supra* at 8–9. But counselors like Mrs. McCullen and Appellant stand squarely within a great tradition of discourse on important, specific topics in the public square. So to the extent that "unbroken tradition" puts the thumb on the judicial scale in distinguishing between content-based and content-neutral regulations, *City of Austin*, 142 S. Ct. at 1475, that favors only one side—and not that of Colorado or Westchester County.

*Hill* simply cannot withstand the rules in *Reed* and *City of Austin*, and it's time for the Supreme Court not just to recognize it as "distort[ion]" of "First Amendment doctrines[,]" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2276 & n.65 (2022), nor just to avoid resuscitating or citing it, *see City of Austin*, 142 S. Ct. at 1475, but to end it.

13

## **CONCLUSION**

For all the foregoing reasons, *Hill v. Colorado* should be overruled and the First Amendment rights of Mrs. McCullen and Appellant should be vindicated.

DATED: March 3, 2023

>*/s/ Edward M. Wenger*
>Edward M. Wenger
>Caleb Acker
>HOLTZMAN VOGEL BARAN
>TORCHINSKY & JOSEFIAK PLLC
>15405 John Marshall Highway
>Haymarket, VA 20169
>Phone: 540-341-8808
>Fax: 540-341-8809
>emwenger@holtzmanvogel.com
>
>*Counsel to Amicus Curiae Eleanor McCullen*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1) and 2d Cir. R. 29.1(c), I certify the following: This brief complies with the type-volume limitations because it contains 2,936 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) and Local Rule 32.1 because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Edward M. Wenger*
Edward M. Wenger

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed with the Clerk via the CM/ECF system that has sent a Notice of Electronic filing to all counsel of record.

DATED: March 3, 2023

>*/s/ Edward M. Wenger*
>Edward M. Wenger