# 23-30-cv

## United States Court of Appeals
## for the Second Circuit

---

DEBRA A. VITAGLIANO,

*Plaintiff-Appellant,*

v.

WESTCHESTER COUNTY,

*Defendant-Appellee.*

---

ON APPEAL FROM A CIVIL JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF OF APPELLEE WESTCHESTER COUNTY**

---

JOHN M. NONNA
Westchester County Attorney

JUSTIN R. ADIN
Deputy County Attorney

SHAWNA C. MACLEOD
Senior Assistant County Attorney

148 Martine Avenue
600 Michaelian Office Building
White Plains, New York 10601
Telephone: (914) 995-2690
Attorneys for Appellee Westchester County

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF JURISDICTION ............................................................... 2

STATEMENT OF THE ISSUES .................................................................... 3

STATEMENT OF FACTS .............................................................................. 3

    1. Chapter 425 ......................................................................................... 3

    2. The Instant Action .............................................................................. 4

SUMMARY OF ARGUMENT ...................................................................... 5

STANDARD OF REVIEW ............................................................................ 6

ARGUMENT .................................................................................................. 7

    I. This Court Should Affirm on Standing ............................................... 7

        A. Appellant Has Not Established Standing ................................. 7

        B. This Court Should Not Reach Appellant's First Amendment
           Claim ..................................................................................... 10

    II. Section 425.31(i) is Constitutional .................................................. 11

        A. There is No Dispute That *Hill* is Binding ............................. 11

        B. Even if a Dispute Existed, *Hill* Controls .............................. 11

        C. Section 425.31(i) Passes Intermediate Scrutiny .................... 14

           *i. Section 425.31(i) is Content Neutral* ................................. 14

           *ii. Section 425.31(i) Serves a Significant Governmental Interest* .............. 17

           *iii. Section 425.31(i) Is Narrowly Tailored* ............................ 18

           *iv. Section 425.31(i) Leaves Open Ample Alternative Channels for
             Communication* ............................................................... 25

# TABLE OF CONTENTS
## (Continued)

**Page**

III. This Court Should Reject the Proposed Amicus Brief of McCullen ............... 26

CONCLUSION .......................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017) ........................................................................................... 13

*Adam v. Barr*, 792 F. App'x 20 (2d Cir. 2019), *cert. denied* 140 S. Ct. 1119 (2020) .7, 8, 10

*Ashwander v. TVA*, 297 U.S. 288 (1936) (Brandeis, J. concurring) ................................ 10

*Babbit v. UFW Nat'l Union*, 442 U.S. 289 (1979) ..................................................... 7

*Bond v. United States*, 572 U.S. 844 (2014) ....................................................... 7, 10

*Bruni v. City of Pittsburgh*, 141 S. Ct. 578 (Statement of Thomas, J.) ............................ 13

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) ............................................. 9

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017) ......................................................................................... 16

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S. Ct. 1464 (2022) .................. 15

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ................................... 20

*Erznoznik v. Jacksonville*, 422 U.S. 205 (1975) .................................................... 23

*Escambia County v. McMillan*, 466 U.S. 48 (1984) (*per curiam*) ................................. 10

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006) ................................. 6

*Frisby v. Schultz*, 487 U.S. 474 (1988) ............................................................ 26

*Guippone v. BH S&B Holdings LLC*, 737 F.3d 221 (2d Cir. 2013) .................................. 6

*Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640 (1981) .................... 19, 20, 25

*Hill v. Colorado*, 530 U.S. 703 (2000) ........................................................ passim

*Hous. Works v. Kerik*, 283 F.3d 471 (2d Cir. 2002) ............................................... 15

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ..................................... 7, 9, 10

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994) .................................. 18, 20

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012), *cert. denied*, 568 U.S. 1212 (2013) ...................................................................................................15, 25, 26

*March v. Mills*, 867 F.3d 46 (1st Cir. 2017) ........................................................ 13

*McCullen v. Coakley*, 573 U.S. 464 (2014) ................................................passim

*Nestor v. Pratt & Whitney*, 466 F.3d 65 (2d Cir. 2006) ..................................... 14

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) .................................................. 8

*Price v. City of Chicago*, 915 F.3d 1107 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 185 (2020) ............................................................................................................. 13

*Ryan v. CFTC*, 125 F.3d 1062 (7th Cir. 1997) ............................................26, 27

*Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357 (1997).....................18, 22, 23

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)................................7, 9

*Turco v. City of Englewood*, 935 F.3d 155 (3d Cir. 2019)................................... 13

*Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019) ........................... 9

*U.S. v. Albertini*, 472 U.S. 675 (1985) .............................................................. 18

*U.S. v. Santiago*, 268 F.3d 151 (2d Cir. 2001) ................................................. 14

*United for Peace & Justice v. City of New York*, 323 F.3d 175 (2d Cir. 2003)..................... 15

*United States v. Cambio Exacto, S.A.*, 166 F.3d 522 (2d Cir. 1999) ................... 7

*United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998), *cert. denied* 525 U.S. 1071 (1999) ............................................................................................................. 16

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ......................................18, 24

*Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392 (2d Cir. 2018) ............... 6

*Whalen v. Roe*, 429 U.S. 589 (1977)................................................................. 20

**Statutes**

28 U.S.C. § 1291 .............................................................................................. 3

28 U.S.C. § 1331 .............................................................................................. 2

iv

42 U.S.C. § 1983 ................................................................................................ 2

Chapter 425 of the Laws of Westchester County .................................... 1, 3, 17

Colo. Rev. Stat. § 18-9-122 ......................................................................... 12, 13

Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 (1996) ........................................................................................... 20

Mass. Gen. Laws. Ch. 266 § 120E1/2(a) (West 2012) ................................... 17

Section 425.21 of the Laws of Westchester County ............................. 4, 12, 17

Section 425.31(i) of the Laws of Westchester County ............................. passim

**Other Authorities**

Clarity Women's Center (emr4motherandchild.org) ...................................... 13

https://freeabortionalternatives.com/abortion/abortions/Westchester/White_Plains-ny/ ................................................................................................... 13

Justin O'Connor, *Call to action against crisis pregnancy centers caps off summer of abortion-rights protests*, Campus Times (August 30, 2022), https://perma.cc/GF7D-2YUJ ... 13

Poppy Noor, *Pro-choice militants are targeting 'pregnancy crisis centers' across US*, The Guardian, https://perma.cc/L7A2-66KV ................................................ 13

**Rules**

Fed. R. App. P. 4 .............................................................................................. 3

## **PRELIMINARY STATEMENT**

The First Amendment has a long history of allowing reasonable time, place, and manner restrictions, so long as those restrictions serve legitimate and significant governmental interests and do not discriminate based on the message. Here, the County of Westchester ("the County") has enacted a law—Chapter 425 of the Laws of Westchester County—that places restrictions on the place and manner by which people can engage in speech outside of reproductive health care facilities, in order to serve a number of legitimate governmental interests—interests that Appellant does not challenge herein.

The only restriction at issue in this action—the creation of a "bubble-" or "buffer-zone"—is modeled directly after a Colorado statute that the Supreme Court upheld in *Hill v. Colorado*, 530 U.S. 703 (2000). Appellant admits that *Hill* is dispositive of her claim, and simply seeks to use this Court as a stepping stone on the way to the Supreme Court, where she hopes to overturn 23-year-old precedent.

However, as the District Court recognized, Appellant does not have standing to pursue this action. Standing requires more than the mere existence of a law and a desire to violate it. In this pre-enforcement lawsuit, Appellant was required to allege some facts demonstrating that there was a credible threat of enforcement. She did not. As such, Appellant's attempt to reach the Supreme Court regarding the validity of *Hill* must fail because she does not meet Article III's requirements for standing.

1

Moreover, even if *Hill* did not exist, the County's law is constitutional. There can be no question that the County's regulation is content-neutral. While it is limited in application to "protest, education, or counseling," the content of the speech is irrelevant—the counseling could be about abortion, the environment, or any other topic. The limitation—which Appellant claims is content-based—is only on the *place and manner* of speech, not the content. Indeed, if anything, the application to "protest, education, or counseling" makes the law more narrowly tailored.

This bubble zone—which contrary to Appellant's position is *not* a sidewalk counseling ban—strikes a balance between protected First Amendment expression and the rights of individuals to enter reproductive health care facilities safely. It leaves viable methods for Appellant and others to exercise their First Amendment protected rights while protecting the safety and privacy of individuals seeking medical care.

Ultimately, while Appellant may not be able to speak in the exact manner she prefers, the First Amendment does not require that. The County is entitled to create content-neutral, time, place, and manner restrictions, which it has done here. The County's law is constitutional.

## STATEMENT OF JURISDICTION

Appellant's underlying complaint contained claims under 42 U.S.C. § 1983, giving the District Court jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction

over the District Court's dismissal of the complaint. *See* 28 U.S.C. § 1291; FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

I. Whether the District Court correctly held that Appellant did not have Article III standing to pursue this claim?

II. Whether the District Court correctly dismissed Appellant's claim where Appellant conceded, and continues to concede, that binding precedent of the Supreme Court controls this action and mandates dismissal?

## STATEMENT OF FACTS

**1. Chapter 425**

On June 27, 2022, the County enacted Chapter 425 of the Laws of Westchester County ("Chapter 425"). Section 425.31(i), the provision at issue in this action, provides that:

> It shall be unlawful for any person to do the following:
>
> . . .
>
> i. knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way within a radius of one-hundred (100) feet from any door to a reproductive health care facility.

(App. Br. Stat. App'x at 64-65).

3

Chapter 425 defines reproductive health care facilities to mean "any building, structure, or place, or any portion thereof, at which licensed, certified, or otherwise legally authorized persons provide reproductive health care services." Chapter 425 § 425.21(k) (App. Br. Stat. App'x at 64). In turn, reproductive health care services are defined as "medical, surgical, counseling, or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." Chapter 425.21(l) (App. Br. Stat. App'x at 64).

## 2. The Instant Action

On November 1, 2022, Appellant commenced the instant action. In her complaint, Appellant alleged that, while she has never actually engaged in sidewalk counseling, she intended to do so in the future. *See generally* App. 05-07. Appellant further alleged that she anticipated performing sidewalk counseling by approaching women to begin a conversation, and to hand them material. App. 08. Appellant asserted that she intended to move within eight feet of people because that is the distance she "would view as normal for talking in a noisy public space." *Id.* Appellant alleges that she would have commenced sidewalk counseling if not for the enactment of Chapter 425. App. 15.

On December 16, 2022, the County filed a letter requesting a pre-motion conference in anticipation of making a motion to dismiss. The County noted that Appellant's claims were foreclosed by binding Supreme Court precedent, and that

Section 425.31(i) was a valid, content-neutral, time, place, and manner restriction as is permitted under the First Amendment. App. 29-30.

On December 23, 2022, Appellant filed a letter in response. In that letter, Appellant "agree[d]" that the District Court "remains bound by *Hill* until the Supreme Court formally overrules it." App. 33. Thus, Appellant recognized that *Hill* "forecloses her claims." App. 35. Given this concession, Appellant asked the District Court to treat the pre-motion letters as the briefing on the motion to dismiss and to dismiss the case. *Id.*

On January 3, 2023, the District Court obliged Appellant's request, converted the pre-motion letters as briefing, and dismissed this action. App. 36-43. In rendering its decision, the Court first found that Appellant lacked standing under Article III. App. 39-40. The District Court then found that Appellant's claim was foreclosed by *Hill*, and that Section 425.31(i) was both content-neutral and "clearly narrowly tailored." App. 6-7. The instant appeal followed.

## SUMMARY OF ARGUMENT

Appellant does not have standing to pursue this action. Standing requires Appellant to show a credible threat of enforcement, which requires more than simply the existence of a law. Appellant has not shown, or alleged, any facts to support a credible threat—indeed, Appellant asserts that she is not required to do so and need only state that she wants to take actions that she believes would contravene the law.

That is not enough to establish standing. As Appellant has not established standing, there is no reason to reach her constitutional claim.

If the Court does reach her constitutional claim, there is no dispute to resolve. Appellant concedes that the Supreme Court's decision in *Hill v. Colorado* controls. Furthermore, the County's law is a content-neutral, time, place, and manner restriction that clearly passes intermediate scrutiny. Section 425.31(i) only restricts the place and manner in which a message can be communicated, without regulating the content of the communication. Further, the County has valid (and unchallenged) governmental interests that are served by the County's buffer zone. This buffer zone is narrowly tailored to protect interests in, *inter alia*, the free-flow of traffic, the ability to access reproductive health care facilities, and to protect the privacy of individuals seeking medical care. It further leaves open ample alternative channels for communication, as it permits expressive activity by Appellant and others in close proximity to their intended audience.

## <u>STANDARD OF REVIEW</u>

This Court reviews questions of standing under Article III *de novo*. *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006). Dismissal for failure to state a cause of action is also reviewed *de novo*. *Guippone v. BH S&B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013). This Court may "affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) (citation omitted).

6

## ARGUMENT

## I. This Court Should Affirm on Standing

"Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (quotation marks and citations omitted). Further, as affirming on standing would dispose of this case, this Court should decide standing first. *Bond v. United States*, 572 U.S. 844, 855 (2014).

### A. Appellant Has Not Established Standing

In order to establish standing, Appellant was required to show (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest" (2) that her "intended future conduct is 'arguably proscribed by [the] statute'" she challenged; and (3) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159-162 (2014) (alteration in original) (quoting *Babbit v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979)).

As this Court has made clear, however, a "credible threat is not established by 'imaginary or speculative' fears of prosecution," and requires something more concrete. *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019), *cert. denied* 140 S. Ct. 1119 (2020) (quoting *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015)).

> Although "courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund,'" *Cayuga Nation* [*v. Tanner*], 824 F.3d at 331 (quoting *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013)), the mere existence of a law prohibiting intended conduct does not automatically confer Article III

standing, *see Knife Rights*, 802 F.3d at 384 ("The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue.").

*Id.*

Here, Appellant has not identified a credible threat of enforcement, outside of the general existence of the law. In *Adam*, this Court found the appellant lacked standing on the grounds that the presumption that a law would be enforced was insufficient. *Id.* at 23. This Court then went on to give examples of where the credible threat was sufficiently addressed.

> For example, in *Cayuga Nation*, we found that the plaintiffs had alleged a credible threat of prosecution not only because their behavior was clearly prohibited by an ordinance, but also because the town "announced its intention to enforce the Ordinance" against the plaintiffs and warned the plaintiffs that failure to comply might constitute an offense punishable by fine, imprisonment, or both. 824 F.3d at 331; *see also Susan B. Anthony List*, 573 U.S. at 164 (discussing history of past enforcement of a statute against the petitioners, for the same conduct, as being good evidence that "the threat of enforcement is not 'chimerical'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974))); *Knife Rights*, 802 F.3d at 385-87 (fear of prosecution not conjectural or hypothetical "given that defendant [district attorney] recently identified [plaintiff] as a [state criminal law] violator and pursued enforcement action against it").

*Id.* (alterations in original); *accord Picard v. Magliano*, 42 F.4th 89, 100 (2d Cir. 2022) ("Indeed, perhaps the most significant piece of evidence in Picard's favor — and what makes Picard's case stand out from other pre-enforcement challenges — is that he has already been arrested for his jury nullification advocacy prior to initiating this lawsuit.").

In *Susan B. Anthony List*, the Supreme Court only found standing after examining the facts relating to future enforcement. There, a substantial risk of future enforcement existed based on, *inter alia*: (1) prior enforcement against the petitioner; (2) the enforcement agency handled 20 to 80 claims a year under the at-issue statute; and (3) the owner of a billboard that the petitioner wanted to display a message on refused after receiving a letter threatening enforcement. 573 U.S. at 164-65.[1]

Notably, the cases relied upon by Appellant do not hold to the contrary. In *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016), this Court found standing where the individual plaintiffs alleged that they intended to engage in the proscribed activity "and the Village has announced its intention to enforce the Ordinance against" them. In *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65, 69 (2d Cir. 2019), the statute in question specifically and directly targeted the plaintiff—it explicitly prohibited the extension of a specific runway at Tweed. This Court held that "[w]here as here, the plaintiff is himself an object of the action (or forgone action) at issue . . . there is ordinarily little question that the action or inaction has caused him injury." *Id.* at 70 (quotation marks and citation omitted; ellipses in original). In *Knife Rights*, this Court found standing where the plaintiff had previously been "officially charged, paid fines,

---

[1] While the Supreme Court found these items constituted a credible threat of enforcement, it did "not decide whether that threat standing alone gives rise to an Article III injury," instead relying on that threat combined with the possibility of criminal prosecution to impart standing. 573 U.S. at 166. As there is the potential for criminal prosecution under Chapter 425, the focus herein is on the first part of the inquiry—whether a credible threat has been sufficiently alleged.

surrendered property in purported violation of law, implemented a prosecution-approved compliance program, and entered into a deferred prosecution agreement that expressly threatened future charges." 802 F.3d at 385.

These cases are far cries from Appellant's allegations. Here, at most, Appellant asserts that she intends to engage in actions she has never before engaged in, and is concerned that she will be subject to enforcement—despite no allegations that there has ever been enforcement or threats of enforcement. Given that "the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing" (*Adam*, 792 F. App'x at 22), Appellant has failed to establish standing and the decision of the District Court should be affirmed.

**B. This Court Should Not Reach Appellant's First Amendment Claim**

"[I]t is 'a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.'" *Bond*, 572 U.S. at 855 (quoting *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (*per curiam*)). As Justice Brandeis noted, "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J. concurring).

As set forth above, Appellant has not established standing, which is a sufficient basis to affirm the District Court and dispose of this case. Thus, this Court may affirm on that ground alone, and need not reach Appellant's constitutional claims.

## II. Section 425.31(i) is Constitutional

If this Court were to reach constitutionality, it should affirm the District Court. It is *undisputed* that, under binding Supreme Court precedent, Section 425.31(i) is constitutional. Thus, the District Court should be affirmed.

### A. There is No Dispute That *Hill* is Binding

It is undisputed (and indisputable) that the Supreme Court's decision in *Hill* controls. (*See* App. Br. at 33-34). Indeed, Appellant states as much repeatedly:

- "the district court was right that this case is (for now) controlled by *Hill*." (p. 33);
- "The district court was right that it was bound by *Hill* to reject Plaintiff's claims." (p. 34);
- "Thus, *Hill* 'remains binding' for now and supports the district court's dismissal." (p. 35) (citation omitted);
- "the district court's merits holding was dictated by *Hill*" (p. 57).

As there is no dispute that the District Court appropriately dismissed Appellant's claim, this Court should affirm the District Court.

### B. Even if a Dispute Existed, *Hill* Controls

Appellant seeks to invalidate Section 425.31(i). That section makes it unlawful to:

knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing any

11

material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public right of way within a radius of one-hundred (100) feet from any door to a reproductive health care facility.

(App. Br. Stat. App'x at 64-65). This provision is modeled precisely after the Colorado law at issue in *Hill*. That law provides:

No person shall knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health-care facility.

Colo. Rev. Stat. § 18-9-122(3) (1999); *Hill*, 530 U.S. at 707, n.1. In other words, the only differences between Section 425.31(i) and the law upheld in *Hill* are that Section 425.31(i) relates to passing "any material" instead of just "leaflet[s] or handbill[s]," and that it only applies to reproductive health care facilities instead of all health-care facilities. The Supreme Court expressly held in *Hill* that the Colorado statute at issue was both "content neutral" and "narrowly tailored," and the same result must necessarily follow here. 530 U.S. at 723, 725.

Indeed, arguably Section 425.31(i) is *more* narrowly tailored than the Colorado statute, as it only applies outside facilities that offer reproductive health care, as opposed to the much broader place restrictions in the Colorado statute. Further, Section 425.31(i) is *more* content-neutral than the Colorado statute, as it applies to both pro-choice facilities and anti-abortion pregnancy crisis centers. *Compare* Section 425.21(k)-

12

(l) (includes facilities that make referrals or counsel with respect to reproductive health) *with* Colo. Rev. Stat. § 18-9-122(4) (only applying to facilities licensed to provide medical treatment). Thus, Section 425.31(i) protects both sides of the debate—applying at facilities such as Planned Parenthood *and* pregnancy crisis centers that have been subject to protests by pro-choice advocates.[2]

*Hill* has been applied as controlling law by several circuits over the last several years. *See March v. Mills*, 867 F.3d 46, 64 (1st Cir. 2017); *Turco v. City of Englewood*, 935 F.3d 155, 165-67 (3d Cir. 2019); *Price v. City of Chicago*, 915 F.3d 1107, 1119 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 185 (2020); *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 403-04 (D.C. Cir. 2017). Indeed, in *Bruni v. City of Pittsburgh*, Justice Thomas, in concurring with the denial of certiorari, acknowledged that the Supreme Court has not overruled *Hill*. 141 S. Ct. 578 (Statement of Thomas, J.).

As this Court has expressly stated:

> "It is not within our purview to anticipate whether the Supreme Court may one day overrule its existing precedent. 'If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.'"

---

[2] *See, e.g.*, Poppy Noor, *Pro-choice militants are targeting 'pregnancy crisis centers' across US*, The Guardian, https://perma.cc/L7A2-66KV; Justin O'Connor, *Call to action against crisis pregnancy centers caps off summer of abortion-rights protests*, Campus Times (August 30, 2022), https://perma.cc/GF7D-2YUJ. There are pregnancy crisis centers in Westchester, which Chapter 425 protects. *See, e.g.*, Clarity Women's Center (emr4motherandchild.org); https://freeabortionalternatives.com/abortion/abortions/Westchester/White_Plains-ny/.

*Nestor v. Pratt & Whitney*, 466 F.3d 65, 72 n.8 (2d Cir. 2006) (quoting *U.S. v. Santiago*, 268 F.3d 151, 155 n.6 (2d Cir. 2001) (alterations in the original)).

Given that *Hill* remains binding Supreme Court precedent, and Section 425.31(i) essentially mirrors the law upheld by *Hill*, Section 425.31(i) is constitutional and the District Court should be affirmed.

### C. Section 425.31(i) Passes Intermediate Scrutiny

Even if *Hill* did not control—or even apply—Section 425.31(i) is a valid, content-neutral time, place, and manner restriction that is traditionally permitted under the First Amendment. There is no dispute that the County law regulates speech in a traditional public forum. Thus, the question as to what level of scrutiny applies turns on whether the regulation is content-neutral. Where a regulation is content-neutral, intermediate scrutiny applies, and the regulation must be "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quotation marks and citation omitted).

#### i. Section 425.31(i) is Content Neutral

As Appellant notes, an individual may approach in the bubble zone to ask for directions. That does not automatically render the regulation content-based. The Supreme Court's "First Amendment precedents and doctrines have consistently recognized that restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral." *City of Austin v. Reagan Nat'l Adver. of Austin, LLC,*

14

142 S. Ct. 1464, 1473 (2022). While Section 425.31(i) applies only to "protest, education, or counseling," it does so irrespective of the speaker's message. Thus, while an individual can approach within 8 feet of another person to ask for directions, they *cannot* approach within 8 feet (without that person's consent) to counsel or educate that person about the benefit of GPS.

Restrictions based on the activity, and not the content of the speech, are typical content-neutral restrictions that this Court has routinely upheld. *See, e.g., Hous. Works v. Kerik*, 283 F.3d 471, 474-75 (2d Cir. 2002) (discussing content-neutral permit scheme for steps of city hall, where permits were required for demonstrations, picketing, vigils, and similar conduct, but not for certain types of ceremonies); *United for Peace & Justice v. City of New York*, 323 F.3d 175, 177 (2d Cir. 2003) (prohibiting a moving protest while allowing cultural parades content-neutral). In *Marcavage v. City of New York*, this Court found a regulation to be content-neutral that prohibited all demonstrations within a designated area during the Republican National Convention. 689 F.3d 98, 104 (2d Cir. 2012), *cert. denied*, 568 U.S. 1212 (2013). In so holding, this Court noted that the "restriction on expressive activity was not aimed at the content of the message; no demonstrating of any kind was allowed in that zone." *Id.* Thus, while the *method* of

speech (demonstration) was prohibited, the actual message was not being regulated. The same applies here.[3]

Nor is it relevant that the prohibition is limited to a defined area outside of reproductive healthcare facilities. "It is true, of course, that by limiting the buffer zones to [reproductive healthcare] clinics, the Act has the inevitable effect of restricting abortion-related speech more than speech on other subjects. But a facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics."[4] *McCullen*, 573 U.S. at 480 (quotation marks and citation omitted); *accord*, *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998), *cert. denied* 525 U.S. 1071 (1999) ("It is irrelevant whether, in practice, most of those prosecuted under FACE are anti-abortion protestors. First Amendment law does not recognize disparate impact claims. And a group cannot obtain constitutional immunity from prosecution by

---

[3] Appellant's reliance on *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017), is misplaced. In *Centro*, this Court was faced with an ordinance that prohibited stopping cars for the purpose of soliciting employment. There, the ordinance banned the *method* (solicitation) only when combined with the *content* (employment). *Id.* at 112. Put differently, under the law at issue in *Centro*, an individual could engage in the method (solicitation) for different content (such as selling goods). Thus, the content was a critical factor. Here, the method (protest, education, or counseling) is the only thing regulated—the content is irrelevant.

[4] This holding by the Supreme Court in *McCullen* refutes the argument of proposed-amicus Eleanor McCullen, who asserts that because Section 425.31(i) "applies only outside of 'reproductive health care facilities' . . . the 'counseling' regulated is speech about abortion and pregnancy." (McCullen Br. at 12). Indeed, Ms. McCullen made this exact argument to the Supreme Court, which was expressly *rejected* by that Court. 573 U.S. at 479.

16

violating a statute more frequently than any other group.") (quotation marks and citations omitted; alterations accepted).

In fact, in *McCullen*, the law at issue applied only to facilities where abortions were performed. 573 U.S. at 471 (reproductive health care facility defined to be a place "where abortions are offered or performed.") (quoting Mass. Gen. Laws. Ch. 266 § 120E1/2(a) (West 2012)). Here, the County's law regards any "medical, surgical, counseling, or referral services relating to the human reproductive system, including pregnancy or the termination of a pregnancy." Chapter 425.21(l) (App. Br. Stat. App'x at 64). Thus, Section 425.31(i) also applies outside of pregnancy crisis centers, such as those where Appellant herself volunteered. (*See* App. 07). This further evidences the County law's content neutrality; Section 425.31(i) does not favor any position in a reproductive healthcare (or any) debate. *See McCullen*, 573 U.S. at 482-83.

As such, Section 425.31(i) is content neutral, and intermediate scrutiny applies. *Id.* at 477.

### ii. Section 425.31(i) Serves a Significant Governmental Interest

In enacting Chapter 425, the County found that there were a number of governmental interests served by this law. Those interests were to:

> protect and promote the public health, safety, and welfare; ensure order; protect the freedom of access to reproductive health care facilities; protect the freedom to obtain reproductive health care services; promote the free flow of traffic in the public way; advance medical privacy and the well-being of patients seeking access to reproductive health care facilities and

17

obtaining reproductive health care services; and safeguard private property.

(App. Br. Stat. App'x at 61). These interests have already, and repeatedly, been found significant by the Supreme Court. *McCullen*, 573 U.S. at 486-87 (citing *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357 (1997) and *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 767-68 (1994)). Appellant does not appear to challenge these well-established interests.

### iii. Section 425.31(i) Is Narrowly Tailored

Given that Section 425.31(i) is content-neutral, it only needs to be narrowly tailored to serve the governmental interests identified above. *McCullen*, 573 U.S. at 486.

> For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests. Such a regulation, unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government's interests. But the government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.

*Id.* (quotation marks and citations omitted). Thus, "narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quoting *U.S. v. Albertini*, 472 U.S. 675, 689 (1985)).

There can be no dispute "that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be

desired." *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 647 (1981). While the County's law does not allow Appellant the unfettered discretion to communicate her views as she might desire, it certainly allows her protected expression. Appellant may stand anywhere in the public right-of-way to provide counseling or display signs. Appellant may "attempt to offer literature as drivers turn into the parking lots" (*McCullen*, 573 U.S. at 488), and may hold out leaflets to anyone approaching her.

The County's bubble zone under Section 425.31(i) is narrowly tailored to support the County's interests. As noted, among the County's interests are to: (1) protect the freedom of individuals to obtain reproductive health care services; (2) promote the free flow of traffic in the public way; and (3) advance medical privacy and the well-being of patients who seek access to reproductive health care facilities and reproductive health care services. However, if individuals can be swarmed by protestors on their way to any reproductive health care facility,[5] those interests may be impaired. First, the free flow of traffic on a sidewalk may be impaired if protestors are allowed to approach and surround an individual seeking access to a facility. Second, it may make it more difficult for the individual to actually enter a facility, if they need to try to evade a protestor or counselor. While it is likely Appellant will argue that she does not intend to surround an individual as part of a group of counselors or protestors, narrow tailoring does not

---

[5] Again, as noted previously, this would include both facilities such as Planned Parenthood and anti-abortion pregnancy crisis centers.

mean that the County must tailor a law to each individual's intended activities, only that it must protect the government's interests while not overly burdening speech. "The justification for the [law] should not be measured by the disorder that would result from granting an exemption solely to" Appellant. *Heffron*, 452 U.S. at 652.

Third, there is a right to privacy with respect to the disclosure of medical information. *See Whalen v. Roe*, 429 U.S. 589, 598-99 (1977) (individuals have a protected interest in avoiding disclosure of personal medical information); *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2267 (2022) (differentiating "the right to shield information from disclosure" from the right to make decisions without governmental interference); *see also* Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 (1996) (protecting the confidentiality of medical information). Simply the possibility of being identified as seeking reproductive health care "may lead [individuals] to avoid or to postpone needed medical attention." *Whalen*, 429 U.S. at 602. By enacting Section 425.31(i), the County has balanced the interests of speech against the privacy interests of the individuals seeking medical services. Protestors or counselors can attempt to influence individuals, but individuals can also seek to avoid identification by those protestors or counselors. Such a balance is well within the bounds of constitutionality. Indeed, the "First Amendment does not demand that patients at a medical facility undertake Herculean efforts to escape the cacophony of political protests." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 772-73 (1994).

20

The bubble zone at issue herein is also significantly different than the one in *McCullen*. The *McCullen* bubble zone involved a 35-foot buffer zone, where protestors or sidewalk counselors could not enter or stand at all. 573 U.S. at 471-72. Thus, the Supreme Court found the law was "truly exceptional" and "burden[s] substantially more speech than necessary to achieve" the interests involved. *Id.* at 490. Given that it prohibited *all* speech and conduct within 35 feet of a clinic, the Supreme Court found it was not narrowly tailored, as there were alternative methods available "without excluding individuals from areas historically open for speech and debate." *Id.* at 494. Here, no one is excluded from "areas historically open for speech and debate."

Furthermore, Appellant can engage in "personal, caring, *consensual* conversations." *Id.* at 489 (emphasis added). Under *McCullen*, even if a counselor was engaged in a fully consensual conversation, it either had to stop once the 35-foot line was reached, or the counselor would have to begin shouting to be heard. Here, Appellant can remain merely 8 feet[6] away from a non-consenting individual, and can be as close to a consenting individual as that individual would like.

---

[6] Appellant attacks the eight-foot limit, attempting to compare it to the six-foot social distancing recommendations from the Centers for Disease Control with respect to the COVID-19 pandemic. (App. Br. at 50). This is a non-sequitur. One is a distance at which two people can still speak in a conversational tone, the other a distance at which an airborne disease may be less likely to be transmitted between individuals. Further, if Section 425.31(i) provided for a six-foot bubble zone instead of eight-feet, there is no doubt that Appellant would still challenge the constitutionality of the law.

Section 425.31(i) is also distinct from the bubble zone that was at issue in *Schenck*. In *Schenck*, the Supreme Court was faced with a 15-foot floating buffer zone that required protestors and counselors to "move as the individual moves" in order to remain 15 feet away at all times. 519 U.S. at 377-78. Specifically, the buffer zone prevented "demonstrating within 15 feet of any person entering or leaving the clinics." *Id.* at 364 (quotation marks omitted). Thus, as an individual approached a protestor, the protestor had to either cease their expressive activity or move away from the individual. That is not the case here. Here, a protestor or counselor need not move as an individual approaches. Appellant can stand on the sidewalk, directly adjacent to the driveway, and offer literature and initiate conversations as cars turn in or people walk by. Under the zone in *Schenck*, Appellant would have needed to move away as the car approached.

The *Schenck* Court further noted that there was difficulty with the buffer zone given the requirement that a protester maintain 15 feet of distance from *every* person seeking to enter or leave a clinic, as attempting to move from one individual could lead to moving toward another. *Id.* at 378-79. The Court thus concluded that because "there may well be other ways to both effect such separation and yet provide certainty" that the individual could comply with the buffer zone, the injunction was not sufficiently narrowly tailored. *Id.* The County's law is drawn precisely to avoid this situation: its floating buffer zone effects separation while providing certainty to protestors and counselors. It does this in two ways. First, it provides a scienter requirement—in order

to violate Section 425.31(i) the approach must be knowing. Second, it permits the counselor or protestor to stay static—there is no requirement that they maintain a certain distance, only that the protestor or counselor cannot *approach* within 8 feet of another without that person's consent. Thus, it satisfies the requirements that the *Schenck* Court found lacking in that buffer.

The bubble zone herein is also not remotely similar to the regulation at issue in *Erznoznik v. Jacksonville*, 422 U.S. 205 (1975). In *Erznoznik*, the Court was faced with a content-based restriction that targeted nudity in films shown in drive-in theaters. Finding that the content-based restriction was unconstitutional, the Court noted that the intent was to keep people outside the theater from having to see nudity, but that those people were in "places where the offended viewer readily can avert his eyes. In short, the screen of a drive-in theater is not so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it." *Id.* at 212 (quotation marks and citation omitted). In other words, a person walking down the street who did not want to see what was on the movie screen could simply not look at it. Here, Appellant is seeking to make it so people *cannot* avoid exposure, by walking right up to an individual and begin speaking to them. The County's bubble zone thus ensures that Appellant cannot be "so obtrusive as to make it impossible for an unwilling individual to avoid exposure" to her. *Id.*

The limitation on the applicability to "protest, education, or counseling" is additional narrow tailoring. A person asking the time, or for quick directions, does not implicate the County's interests in the free-flow of traffic, people seeking access to reproductive health care facilities, or people seeking to keep medical information confidential. However, protest, education, or counseling—activities that necessarily involve extended discussion or conversation—clearly implicate those interests. Thus, limiting the application to certain *manners* of speech—without reference to the content thereof—further narrowly tailors the bubble zone to meet the County's interests.

Section 425.31(i) is narrowly tailored.[7] It "need not be the least restrictive or least intrusive means of serving the government's interests" (*McCullen*, 573 U.S. at 486), despite Appellant's arguments that the County could have imposed other restrictions (*see* App. Br. at 50-53). *Accord*, *Ward*, 491 U.S. at 797 ("This less-restrictive-alternative analysis . . . has never been a part of the inquiry into the validity of a time, place, and manner regulation. Instead, our cases quite clearly hold that restrictions on the time, place, or manner of protected speech are not invalid simply because there is some imaginable alternative that might be less burdensome on speech.") (quotation marks and citations omitted). Section 425.31(i) provides reasonable time, place, and manner

---

[7] If this Court were to find that, on the face of the complaint, Section 425.31(i) is not narrowly tailored, the appropriate remedy would be to vacate and remand for further proceedings to develop the record regarding the narrow tailoring of the law.

24

restrictions that are tied to the County's governmental interests, and therefore survive

First Amendment scrutiny regardless of *Hill.*

*iv. Section 425.31(i) Leaves Open Ample Alternative Channels for Communication*

The final question is whether Section 425.31(i) leaves open ample alternative

channels for Appellant to communicate. *Marcavage*, 689 F.3d at 107.

> Although an alternative channel for communication must be available, it
> is clear that the First Amendment . . . does not guarantee protesters access
> to every or even the best channels or locations for their expression. The
> requirement that ample alternative channels exist does not imply that
> alternative channels must be perfect substitutes for those channels denied
> to plaintiffs by the regulation at hand; indeed, were we to interpret the
> requirement in this way, no alternative channels could ever be deemed
> ample. All that is required is that an alternative channel be ample--i.e., an
> adequate channel for communication.

*Id.* (quotation marks and citations omitted; alteration accepted; ellipses in original). So

while Appellant believes it is "essential" for her counseling to be conducted in a certain

manner (App. Br. at 50), that is not—and has never been—the standard for First

Amendment review. If it were, then there would never be a content-neutral regulation

that survived a challenge, as every challenge is based on a speaker wanting to do what

the challenged provision prohibits. Indeed, in *Heffron*, the Supreme Court rejected the

challenger's contention that the rule at issue impaired their speech because it could "be

done only by intercepting fair patrons as they move about." 452 U.S. at 653. Just

because the alternative channel is not what the Appellant wants does not make it

constitutionally infirm.

25

"In this Circuit, an alternative channel is adequate and therefore ample if it is within close proximity to the intended audience." *Marcavage*, 689 F.3d at 107 (quotation marks and citation omitted). Here, there is no question that Appellant can counsel "within close proximity" to individuals seeking reproductive health care services, as she can approach to 8 feet of individuals without consent, and closer with consent. Further, it permits Appellant to remain stationary as individuals pass, even if that results in her being within 8 feet of—indeed, even mere inches away from—a person seeking access to a reproductive healthcare facility. Thus, Section 425.31(i) leaves open ample alternative channels of communication. *See generally Frisby v. Schultz*, 487 U.S. 474, 484 (1988).

## III. This Court Should Reject the Proposed Amicus Brief of McCullen

Eleanor McCullen seeks to file an amicus brief in support of Appellant in this matter. Her brief, and the arguments therein, should be rejected.

> An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an amicus curiae brief should be denied.

*Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997) (collecting cases). Here, Ms. McCullen provides none of those bases.

26

The only interests identified by Ms. McCullen are that she is a sidewalk counselor and that she was the lead petitioner in the *McCullen* matter. (Doc. 49-1 at 3-4). This does not provide the Court with any unique perspective, or indeed any perspective that is different from that of Appellant. Ms. McCullen's "experience" in being involved "in federal litigation about her own First Amendment rights" (Doc. 49-1 at 4) is irrelevant to any issue before this Court. Further, her experience as a sidewalk counselor (in another state, without the type of buffer zone at issue herein) does not provide any unique information either.

Indeed, a review of Ms. McCullen's proposed brief does not demonstrate that she provides *any* argument that is not already covered by Appellant's brief. She admits as much in her summary of the argument, stating that "[t]he need for *Hill's* end is aptly described in Appellant's opening brief." (McCullen Br. at 4). Instead, she simply "duplicate[s] the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed." *Ryan*, 125 F.3d at 1063. Further, it is clear that Ms. McCullen is not even arguing a position to this Court—as set forth in her penultimate paragraph, her position is that "it's time for the Supreme Court . . . to end [*Hill*]." (McCullen Br. at 13). As such, this Court should reject the proposed amicus brief of Eleanor McCullen.

## **CONCLUSION**

For the foregoing reasons, the County respectfully requests that this Court affirm the decision of the District Court as to standing and not reach the merits of Appellant's

27

claim. Alternatively, the County respectfully requests that this Court affirm the decision of the District Court in its entirety.

Dated:  March 31, 2023          Respectfully submitted,

*John M. Nonna*
 John M. Nonna
 Westchester County Attorney

JUSTIN R. ADIN
Deputy County Attorney

SHAWNA C. MACLEOD
Senior Assistant County Attorney

148 Martine Avenue
600 Michaelian Office Building
White Plains, New York 10601
(914) 995-2690

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4) because it contains 7,009 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Garamond font and 13-point font for footnotes, using Microsoft Word 2016.

Dated:  White Plains, New York
         March 31, 2023

*John M. Nonna*
John M. Nonna
Westchester County Attorney