# 23-30

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

DEBRA A. VITAGLIANO

*Plaintiff-Appellant,*

v.

COUNTY OF WESTCHESTER,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of New York (Halpern, *J.*), No. 7:22-cv-9370

### PLAINTIFF-APPELLANT'S REPLY BRIEF

Mark L. Rienzi
Joseph C. Davis
Daniel L. Chen
Daniel M. Vitagliano*
THE BECKET FUND
    FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
    Suite 400
Washington, DC 20006
(202) 955-0095
*mrienzi@becketlaw.org*

*Admitted only in New York. Practice
limited to cases in federal court. Supervised
by a member of the D.C. Bar.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES........................................................................ii

INTRODUCTION.............................................................................1

ARGUMENT ...............................................................................2

I. Plaintiff has standing. ...........................................................2

   A. Plaintiff has sufficiently alleged a credible threat of
     prosecution for pre-enforcement standing......................................3

   B. The County's reliance on *Adam v. Barr* is unavailing. ...................8

II. The Sidewalk Counseling Ban violates the First Amendment. ........10

   A. The Sidewalk Counseling Ban is content based...........................11

   B. The Sidewalk Counseling Ban cannot survive strict, or
     even intermediate, scrutiny. ...............................................17

CONCLUSION ...........................................................................24

CERTIFICATE OF COMPLIANCE.......................................................26

CERTIFICATE OF SERVICE.............................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Barr,*
792 F. App'x 20 (2d Cir. 2019) .................................................... 8, 9, 10

*Aptive Env't, LLC v. Town of Castle Rock,*
959 F.3d 961 (10th Cir. 2020) ............................................................ 8

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) ........................................................................... 6

*Brown v. Ent. Merchs. Ass'n,*
564 U.S. 786 (2011) ......................................................................... 17

*Cal. Trucking Ass'n v. Bonta,*
996 F.3d 644 (9th Cir. 2021) ............................................................. 7

*Cayuga Nation v. Tanner,*
824 F.3d 321 (2d Cir. 2016) ........................................................... 5, 9

*Centro de la Comunidad Hispana de Locust Valley v. Town
of Oyster Bay,*
868 F.3d 104 (2d Cir. 2017) ............................................................ 12

*City of Austin v. Reagan National Advertising of
Austin, LLC,*
142 S. Ct. 1464 (2022) .............................................................. 13, 14

*Dobbs v. Jackson Women's Health Org.,*
142 S. Ct. 2228 (2022) ............................................................... 2, 23

*Doe v. Bolton,*
410 U.S. 179 (1973) ........................................................................ 5-6

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.,*
991 F.3d 370 (2d Cir. 2021) .............................................................. 8

*Hedges v. Obama,*
724 F.3d 170 (2d Cir. 2013) ............................................................ 3-4

*Hill v. Colorado,*
530 U.S. 703 (2000) ................................................................... *passim*

*Hill v. Thomas,*
973 P.2d 1246 (Colo. 1999) ................................................. 7

*Knife Rights, Inc. v. Vance,*
802 F.3d 377 (2d Cir. 2015) ..................................... 5, 6, 8, 9

*Majors v. Abell,*
317 F.3d 719 (7th Cir. 2003) ............................................... 5

*Mangual v. Rotger-Sabat,*
317 F.3d 45 (1st Cir. 2003) ................................................ 5

*McCullen v. Coakley,*
573 U.S. 464 (2014) ................................................................ *passim*

*Meadows v. United Servs., Inc.,*
963 F.3d 240 (2d Cir. 2020) ............................................. 22

*N.H. Lottery Comm'n v. Rosen,*
986 F.3d 38 (1st Cir. 2021) ............................................... 6

*N.H. Right to Life PAC v. Gardner,*
99 F.3d 8 (1st Cir. 1996) ..................................................... 8

*Picard v. Magliano,*
42 F.4th 89 (2d Cir. 2022) .................................................. 8

*Price v. City of Chicago,*
915 F.3d 1107 (7th Cir. 2019) ................................. 10-11, 12

*R.I. Ass'n of Realtors, Inc. v. Whitehouse,*
199 F.3d 26 (1st Cir. 1999) ................................................ 7

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ......................................................... 13-14, 17

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
487 U.S. 781 (1988) ....................................................... 17-18

*Speech First, Inc. v. Fenves*,
   979 F.3d 319 (5th Cir. 2020)....................................................................5

*Speech First, Inc. v. Schlissel*,
   939 F.3d 756 (6th Cir. 2019)....................................................................5

*St. Paul Area Chamber of Com. v. Gaertner*,
   439 F.3d 481 (8th Cir. 2006)....................................................................7

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)..........................................................................3, 4, 6

*Tweed-New Haven Airport Auth. v. Tong*,
   930 F.3d 65 (2d Cir. 2019) .......................................................................5

*United States v. Knotts*,
   460 U.S. 276 (1983)................................................................................22

*Virginia v. Am. Booksellers Ass'n*,
   484 U.S. 383 (1988)..............................................................................6-7

*Whalen v. Roe*,
   429 U.S. 589 (1977)................................................................................23

*Wollschlaeger v. Governor*,
   848 F.3d 1293 (11th Cir. 2017)................................................................7

## Statutes

N.Y. Penal Law § 240.20 ..........................................................................18

Reproductive Health Care Facilities Access Act,
   Laws of Westchester County §§ 425 *et seq*................................ *passim*

## Other Authorities

2d Cir. Local R. 32.1.1 ..............................................................................8

## INTRODUCTION

Handed a gift horse, the County looks it in the mouth. Although the County never raised standing below, the district court dismissed this case on that basis. The sole reason it gave was that Plaintiff failed to allege sufficiently "concrete plans" to engage in sidewalk counseling "at any point in the future." As Plaintiff's opening brief explains, the district court's reasoning was based on a clear misreading of the complaint, was mistaken on the law, and cannot be affirmed.

In response, the County does not even attempt to rehabilitate the district court's decision. Instead, it swaps in a new standing argument—that Plaintiff has failed to show a "credible threat" that the County will enforce its Sidewalk Counseling Ban against her. But this argument is just as meritless as the district court's (the gift horse wasn't exactly a thoroughbred). It is not "speculative" to fear consequences if one engages in the precise conduct that a newly enacted statute squarely proscribes. Unsurprisingly, the County's argument is foreclosed by settled precedent addressing standing for pre-enforcement constitutional challenges like this one.

This Court therefore must reach the district court's alternative basis for dismissal—*Hill v. Colorado*. And there, the County's brief only reinforces the need for *Hill* to be overruled. The County offers no substantive defense of *Hill*. It concedes that its law permits approaching women outside abortion clinics to engage in speech of some content but not sidewalk

1

counseling. And while it claims to agree that this case is resolved by *Hill*, it fails even to assert the sole governmental interest the *Hill* Court held justified a law like the Sidewalk Counseling Ban.

The County instead asserts three other interests allegedly supporting its law. None come close to satisfying the narrow-tailoring analysis required by *McCullen v. Coakley*. If this is the best a government can do to justify a sidewalk counseling ban "even if *Hill* did not exist," Resp.2, that only underscores *Hill*'s incompatibility with the First Amendment. As the Supreme Court said last year, *Hill* "distorted First Amendment doctrines." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2276 & n.65 (2022). This Court should recognize as much.

## ARGUMENT

### I. Plaintiff has standing.

The district court's standing ruling turned solely on injury in fact, finding Plaintiff lacks standing because she "does not allege any concrete plans to" engage in sidewalk counseling "at any point in the future." App.40. As Plaintiff explained, however, that ruling not only misreads the complaint, Br.29-30, but also mangles the law, Br.27-28, 31-32. Tell-

ingly, the County makes no attempt to defend the district court's reasoning. Resp.7-10. Nor could it—because the district court failed to apply the governing injury-in-fact test for pre-enforcement challenges. Br.19, 25.[1]

## A. Plaintiff has sufficiently alleged a credible threat of prosecution for pre-enforcement standing.

As the parties agree, in a pre-enforcement challenge, injury in fact exists if Plaintiff alleges (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the conduct is "'arguably proscribed' by" the challenged law; and (3) that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014); *see* Resp.7. The County argues Plaintiff lacks standing for the sole reason that she "has not identified a credible threat of enforcement." Resp.8. But this theory is as faulty as the district court's, which is surely why the County never raised it below.

As Plaintiff already explained, *see* Br.23, where the challenged "statute indisputably proscribe[s] the conduct at issue, [courts] d[o] not place the burden on the plaintiff to show an intent by the government to enforce

---

[1]   Only the County's amici attempt to defend the district court's standing reasoning, but their argument suffers from the same fatal defect. None of the cases amici rely on arose in the context of a pre-enforcement constitutional challenge, so they are inapposite. *See* Westchester Coalition for Legal Abortion et al. Amicus Br.18-19. As Plaintiff explained, there is no specific-date-or-time requirement to establish injury in fact in the pre-enforcement context; a plaintiff need only allege a "present desire" to engage in proscribed speech, which Plaintiff here has. Br.25-29.

the law against it." *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013). Rather, courts "presume" such intent provided the "statute is 'recent and not moribund'" and absent "a disavowal by the government or another reason to conclude that no such intent existed." *Id.*

Here, there is no dispute that § 425.31(*i*) proscribes Plaintiff's intended conduct. Br.21-23. The law is recent and not moribund, as it was enacted just months before Plaintiff sued. The County has never disavowed an intent to enforce it. And there is no reason to conclude the County will not enforce it (the County identifies none). Thus, Plaintiff's injury—that she cannot engage in her intended sidewalk counseling because the County just passed a law criminalizing that conduct—is cognizable.

Resisting this straightforward conclusion, the County says the "general existence" of the Sidewalk Counseling Ban is insufficient; rather, Plaintiff must have alleged past "enforcement or threats of enforcement." Resp.8-10. But for one thing, Plaintiff does not rely only on the "general existence" of the Sidewalk Counseling Ban. Her opening brief cites other factors bolstering the credible threat here, such as that the Sidewalk Counseling Ban can be enforced not only by County officials but also by private complainants, Br.24 (citing *Susan B. Anthony List*, 573 U.S. at 164-65), and that the legislative history underlying the Ban expressly contemplates enforcement, including discussions about training police,

4

Br.24. The County simply ignores these points because it has no answer for them.

Nor are past enforcement or threats of enforcement required for pre-enforcement standing.[2] In fact, this Court has repeatedly rejected the idea that pre-enforcement standing requires an "express threat of prosecution specifically directed at the plaintiff." *Cayuga Nation v. Tanner*, 824 F.3d 321, 332 n.9 (2d Cir. 2016) (citing *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 n.4, 386-87 (2d Cir. 2015)); *see also, e.g.*, *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (rejecting argument that "standing is not available" when defendant "has made no overt threat to enforce").

The Supreme Court has squarely found standing without past enforcement or threats of enforcement. In *Doe v. Bolton*, for example, the Court

---

[2] *See, e.g.*, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 336-37 (5th Cir. 2020) (finding pre-enforcement standing and noting "[p]ast enforcement of speech-related policies can assure standing, but … a lack of past enforcement does not alone doom a claim of standing"); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019) (finding pre-enforcement standing and noting the fact that "there is no evidence in the record" of past enforcement "misses the point"); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) ("A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him, the threat is latent in the existence of the statute." (collecting cases)); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) ("Plaintiffs may have standing even if they have never been prosecuted or threatened with prosecution.").

held that physicians challenging a statute that criminalized their procuring an abortion "assert[ed] a sufficiently direct threat of personal detriment" and thus had pre-enforcement "standing despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution." 410 U.S. 179, 188 (1973). And in *Babbitt v. United Farm Workers National Union*, the Court found pre-enforcement standing even though the defendant had not made any specific threat against the plaintiff and the challenged provision "ha[d] not yet been applied and may never be applied" to the plaintiff's conduct. 442 U.S. 289, 302 (1979). What mattered was that the provision "on its face proscribe[d]" the conduct and "the State ha[d] not disavowed any intention of invoking" it. *Id.* at 302. So too here. *See* Br.21-25. *Accord Susan B. Anthony List*, 573 U.S. at 159-60 (*Babbitt* "illustrate[s] the circumstances under which plaintiffs may bring a preenforcement challenge consistent with Article III").

To be sure, a history of past enforcement can be relevant to the credible-threat inquiry. *See, e.g.*, *id.* at 164. But the inquiry "necessarily depends on the particular circumstances at issue." *Knife Rights*, 802 F.3d at 384; *see also N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 50 (1st Cir. 2021) ("[J]ust how clear the threat of prosecution needs to be turns very much on the facts of the case."). Where, as here, a plaintiff challenges a newly enacted law, the presumption of enforcement against proscribed conduct is at its zenith. *See, e.g.*, *Virginia v. Am. Booksellers Ass'n*, 484

U.S. 383, 393 (1988) ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.").[3]

If past enforcement or threats of enforcement were required, a plaintiff could not sue to challenge a new law. But that's obviously not the case. As just one example, *Hill v. Colorado* was a pre-enforcement challenge seeking declaratory and injunctive relief filed just "[f]ive months after the statute was enacted." 530 U.S. 703, 708-09 (2000). And there, "the statute had not yet been enforced" when plaintiffs sued, *Hill v. Thomas*, 973 P.2d 1246, 1248 n.2 (Colo. 1999), or even when the case reached the Supreme Court six years later, *see* Transcript of Oral Argument at 42, *Hill*, 530 U.S. 703 (No. 98-1856) ("[T]here has never been a prosecution under the statute. … There's never been a civil complaint for damages, nor has

---

[3]  *See also, e.g.*, *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("history of enforcement" bears "'little weight' when the challenged law is 'relatively new and the record contains little information as to enforcement or interpretation'"); *Wollschlaeger v. Governor*, 848 F.3d 1293, 1305 (11th Cir. 2017) (en banc) (where a statute is challenged "soon after it was enacted" and the government is defending it, "an intent to enforce … may be inferred"); *St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481, 486-87 (8th Cir. 2006) (finding credible threat given "relatively short time that has passed since enactment" of statute (eighteen years), noting "the threat of prosecution is greater under a statute enacted relatively recently"); *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 32 (1st Cir. 1999) (finding "sufficiently imminent threat of injury loomed" despite government never having pursued criminal charges because record did not show that challenged statute "enacted only twenty years ago, ha[d] fallen into desuetude").

there been a criminal complaint filed pursuant to the statute."). This case is no different.

Rather than offering good arguments to undermine the credible threat of enforcement, the County's brief actually reinforces it. For the County doubles down on its defense of § 425.31(*i*) on the merits—which itself "indicates that [the County] will some day enforce it." *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 17 (1st Cir. 1996); *see also Knife Rights*, 802 F.3d at 386-87 (finding credible threat where defendants "defen[ded] [the statute] supporting these plaintiffs' past arrests" and never "disavowed that they would criminally charge [them] again in the same circumstances"); *Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 976 (10th Cir. 2020) (finding credible threat where defendant "has not indicated that it would not enforce the Curfew against [plaintiff]" and "has vigorously sought to uphold its Curfew in this litigation"). Given all this, the credible threat here more than suffices to satisfy the "low threshold" and "quite forgiving" test for pre-enforcement challenges. *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022).

## B. The County's reliance on *Adam v. Barr* is unavailing.

The County relies almost entirely on *Adam v. Barr*, 792 F. App'x 20 (2d Cir. 2019). But of course, "[r]ulings by summary order do not have precedential effect." 2d Cir. Local R. 32.1.1(a); *see Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 381 (2d Cir. 2021). In

any event, *Adam* casts no doubt on Plaintiff's position. Far from undermining the credible-threat presumption for newly enacted laws proscribing a plaintiff's conduct, *Adam* illustrates how it works.

In *Adam*, a *pro se* plaintiff sued federal officials, seeking to bar them from prosecuting him under the Controlled Substances Act (CSA) for his alleged religious practice of using marijuana. 792 F. App'x at 22-23. Considering the "particular circumstances at issue," *id.* at 22 (quoting *Knife Rights*, 802 F.3d at 384), this Court held that he lacked standing because he "made [no] allegation concerning the past or present enforcement of the CSA in general from which a credible threat could be inferred in this case," *id.* at 23. The Court noted that the presumption "'that the government will enforce its own laws' … in and of itself, [wa]s not sufficient to confer standing, as courts also consider the extent of that enforcement." *Id.*

*Adam* is not analogous. Unlike the Sidewalk Counseling Ban, the CSA was not "recent," *Cayuga Nation*, 824 F.3d at 331—there was a half century of enforcement history to reference. So the Court could actually "consider the extent of that enforcement," rather than simply rest on the presumption "that the government will enforce its own laws." *Adam*, 792 F. App'x at 23.

Further distinguishing it, the *Adam* plaintiff sued the *federal government*, challenging the application of a *federal statute of nationwide scope*. Thus, to have standing, he needed it to be "credible" that the government

would zero in on *him* for his "intention to possess marijuana for his own use," as opposed to the many others who intend to do the same anywhere across the country. *See Adam*, 792 F. App'x at 22-23 ("[H]e would simply be at risk just like any other person in the country who might violate the CSA."). That bears no resemblance to this case, where the Sidewalk Counseling Ban applies only at a handful of specified and publicly known locations in Westchester County, where Plaintiff's sidewalk counseling will be open and obvious to law enforcement, and where not only the County but also motivated and hostile parties could bring an enforcement action if they wish, under the law they support and are fighting to uphold.

*     *     *

Plaintiff has standing. Neither the district court's original theory nor the County's new one shows otherwise.

## II. The Sidewalk Counseling Ban violates the First Amendment.

On the merits, the district court upheld the Sidewalk Counseling Ban based solely on *Hill*. App.41-42. But *Hill* is ripe for overruling, for the reasons Plaintiff already explained. Br.35-46. The County offers no defense of *Hill*, instead simply noting it has not been overruled *yet*. Resp.13. True—but even if this Court remains bound by *Hill*, it is free to identify the "tension" in the Supreme Court's more recent precedents, *Price v. City*

*of Chicago*, 915 F.3d 1107, 1118 (7th Cir. 2019), especially given the urgency of the speech that *Hill* permits governments to suppress, Br.16; *see* Eleanor McCullen Amicus Br.6-7.

Rather than defend *Hill*, the County spends much of its brief arguing it would win "even if *Hill* did not exist"—a telling recognition that *Hill* is not long to be governing law. Resp.2, 14-26. But the County's arguments are also wrong. Absent *Hill*, the Sidewalk Counseling Ban plainly violates the First Amendment, as Plaintiff already demonstrated, Br.46-56, and the County fails to rebut.

## A. The Sidewalk Counseling Ban is content based.

Section 425.31(*i*) is content based on its face. Br.47-48. By its terms, the law's ban on unconsented approaches depends "entirely on *what* [*the speaker*] *intends to say*." *Hill*, 530 U.S. at 742 (Scalia, *J.*, dissenting). If she approaches to "engag[e] in oral protest, education, or counseling," she has committed an offense. Laws of Westchester County § 425.31(*i*). If she approaches to engage in speech for any other purpose, she has not.

In response, the County concedes that a speaker "may approach in the bubble zone to ask for directions," yet it maintains the law is "content neutral." Resp.14. But that is the *definition* of a content-based law. The law permits speech of some content—*e.g.*, asking for directions—while criminalizing speech of other content—*e.g.*, counseling about pregnancy or abortion. Indeed, both this Court and the Seventh Circuit have used

an indistinguishable example—"ask[ing] for the time"—to illustrate a content-based distinction. *Price*, 915 F.3d at 1118; *see Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 112 (2d Cir. 2017) ("Consequently, Town officials must monitor and evaluate the speech of those stopping or attempting to stop vehicles and they may sanction the speaker only if a suspect says the wrong thing, for example, 'hire me' as opposed to 'tell me the time.'").[4]

Directions aside, Plaintiff's opening brief gave numerous other examples of speech permitted by the Sidewalk Counseling Ban, Br.17, 47, none of which the County contests. For example, under the County's law, a speaker could approach within eight feet of a woman entering an abortion clinic to wish her "good luck" with her procedure but not to try to dissuade her from having it. Br.47. That is content discrimination.

Nor does the County dispute that to enforce its law, authorities would have to "examine the content of the message that is conveyed." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014). "*McCullen* explained in no uncertain terms that" this "indeed" renders a law "content based." *Price*, 915 F.3d at 1118. Yet the County now claims this is irrelevant, citing the Supreme

---

[4] Attempting to distinguish *Centro*, the County rewrites it. According to the County, the reason the *Centro* law was content based was that it permitted some types of "solicitation" but not soliciting employment. Resp.16 n.3. That is not what *Centro* said. It said the reason the law was content based was that it permitted stopping a car to engage in some types of *speech* (*e.g.*, asking the time) but not others (soliciting employment). 868 F.3d at 112. That is precisely analogous to this case.

Court's recent billboard case, *City of Austin v. Reagan National Advertising of Austin, LLC*, 142 S. Ct. 1464 (2022). Resp.14-15.

But *City of Austin* cannot save the Sidewalk Counseling Ban. The law at issue in *City of Austin* drew an "on-/off-premises" distinction—signs that advertised something "not located on the site where the sign is installed" were treated differently than signs advertising something on "the property on which [the sign] stands." 142 S. Ct. at 1472. This distinction was "agnostic as to content" because it did not turn on a sign's "substantive message." *Id.* at 1471-72. Rather, it turned solely on "relative location"—the question was simply whether a sign "directs readers to the property on which it stands or to some other, offsite location." *Id.* at 1472-73.

This is nothing like the law here. The Sidewalk Counseling Ban does not turn on "relative location," *id.* at 1473; it turns on content—whether speech constitutes protest, education, or counseling. That is, authorities here must examine speech for its "substantive message," not just for "whether it is located on the same premises as the thing being discussed or not." *Id.* at 1472-73. And unlike the "neutral, location-based" inquiry in *City of Austin*, *id.* at 1471, the required inquiry here is blurry, giving enforcement authorities ample discretion to deem speech they dislike "protesting, education, or counseling" but not speech they favor. That is a core "danger" of content-based laws—that "officials may … wield

13

[them] to suppress disfavored speech." *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015).

All this is why in *City of Austin*, when the dissent accused the majority of "resuscitating *Hill*," 142 S. Ct. at 1492 (Thomas, *J.*, dissenting), the majority demurred, saying *Hill* is "a decision that we do not cite," *id.* at 1475 (majority opinion). The County attempts to leverage *City of Austin* as the very resuscitation of *Hill* the majority disclaimed.

Indeed, if anything, *City of Austin* supports Plaintiff. As Plaintiff explained in her opening brief, Br.55-56, considerations of "history and tradition" were important in *City of Austin*, 142 S. Ct. at 1468-69, 1474-75— but they cut the other way here. There is no longstanding tradition of banning sidewalk counseling outside abortion clinics. Br.56. To the contrary, the "traditional public fora" regulated by the County's law "have historically" been the location for the "open" "exchange of ideas," with the sort of "[l]eafletting and commenting on matters of public concern" that Plaintiff seeks to engage in being "classic forms of speech that lie at the heart of the First Amendment" (unlike commercial billboards). *McCullen*, 573 U.S. at 476-77, 489; *see* Resp.14 ("There is no dispute that the County law regulates speech in a traditional public forum."). The County simply has no response to *City of Austin*'s reliance on history and tradition.

The County's remaining arguments fare no better. First, the County turns to cases involving restrictions on picketing and demonstrating.

Resp.15. But "when the government regulates 'picketing,' or 'demonstrating,' it restricts a particular manner of expression that is … a mixture of conduct and communication." *Hill*, 530 U.S. at 744-45 (Scalia, *J.*, dissenting). Not so for a ban on "oral protest, education, or counseling."

Next, the County attempts to claim its law is *less* problematic than the *Hill* law "as it only applies outside facilities that offer reproductive health care," rather than outside medical facilities generally. Resp.12-13. But the County has it backwards; that distinction if anything only makes the Sidewalk Counseling Ban *more* obviously content based.

In *Hill* itself, Colorado *conceded* that its law "would violate content neutrality" "if it was addressed just to abortion protests." *Hill* Transcript, *supra*, at 43.[5] Indeed, if a state enacted a law "regulating 'oral protest, education, or counseling' within 100 feet of the entrance to any lunch counter," courts "would not … hesitate[] to hold it was content based." *Hill*, 530 U.S. at 767 (Kennedy, *J.*, dissenting). Although the "protest,

---

[5] The County's law is even more restrictive than the *Hill* law in another way. In *Hill*, the Court dismissed as a "hypertechnical theor[y]" that stretching out one's harm to offer literature might constitute "approaching" forbidden by Colorado's law. 530 U.S. at 733. Here, however, the Sidewalk Counseling Ban expressly defines "approach" to mean "to move nearer in distance to someone," and then specifies that the relevant distance is measured from whichever "part of a person's body" is nearest to the other's, including an "outstretched arm." § 425.21(a)-(b). Thus, while a Westchester counselor might be able to stand stock-still on the sidewalk and avoid liability, *see* Resp.26, she risks jail time if she so much as extends her arm—a risk that Colorado counselors (as far as the *Hill* Court could tell) did not face.

education, or counseling" distinction alone suffices to render the law content based, the law's abortion-targeted scope only reinforces the point.

The County claims this argument was "rejected" in *McCullen*, since the *McCullen* law (which was held content neutral) "applied only to facilities where abortions were performed." Resp.16 n.4, 17. But this is a misunderstanding: *McCullen* found the law neutral as to the content of speech because persons could violate it without speaking at all—"merely by standing in a buffer zone, without displaying a sign or uttering a word." *McCullen*, 573 U.S. at 479-80. That reasoning has no relevance to the Sidewalk Counseling Ban, for which speech (or intended speech) is an element of the crime.

Pivoting, the County emphasizes that the law here applies not just to abortion clinics but also to "pregnancy crisis centers [*sic*]," collecting news stories documenting vandalism and violence carried out against such centers elsewhere. Resp.13 n.2, 17, 19 n.5. But Plaintiff is not challenging the provisions of the law prohibiting vandalism and violence, *see* § 425.31(a)-(h); she is challenging only the provision prohibiting sidewalk counseling, § 425.31(*i*). Even the most zealous pro-choice speakers are not known to stand outside crisis pregnancy centers, approach women, and attempt to counsel them into having an abortion. Regardless, even if the prohibition on "protest, education, or counseling" were not obviously aimed at suppressing pro-life speech (it is), it would still be facially content based because it targets protest, education, and counseling. The

First Amendment's prohibition on *viewpoint* discrimination and its prohibition on *content* discrimination are "two distinct … limitations." *Reed*, 576 U.S. at 168.

## B. The Sidewalk Counseling Ban cannot survive strict, or even intermediate, scrutiny.

Because the Sidewalk Counseling Ban is content based, it is "subject to strict scrutiny." *Reed*, 576 U.S. at 165. The County does not even attempt to argue it could satisfy that "demanding standard." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011); *see* Br.49.

Instead, the County argues that the Sidewalk Counseling Ban satisfies the "intermediate scrutiny" applicable to "content-neutral, time, place, and manner" restrictions. Resp.6. But even if the Sidewalk Counseling Ban were such a law—it is not, *see supra*—this is incorrect. While the County's "prophylactic" approach might be permissible under *Hill*, 530 U.S. at 729, it unambiguously fails under *McCullen*. Br.49-54. Even intermediate scrutiny "demand[s] a close fit between ends and means." *McCullen*, 573 U.S. at 486. The County demonstrates nothing of the sort—making this an independent basis to hold the Sidewalk Counseling Ban unconstitutional.[6]

---

[6]  In addressing intermediate scrutiny, the County claims its law leaves open "ample alternative channels of communication." Resp.25-26. But the "presum[ption] [is] that speakers, not the government, know best both what they want to say and how to say it." *Riley v. Nat'l Fed'n of the*

**1.** First, the County says it has an interest in "the free flow of traffic on a sidewalk," which "may be impaired" absent the Sidewalk Counseling Ban. Resp.19. This argument is squarely foreclosed by *McCullen*. There, too, Massachusetts "assert[ed] an interest in preventing congestion in front of abortion clinics" and "promoting the free flow of traffic on streets and sidewalks." 573 U.S. at 486, 493. But the Court held that rather than simply excluding counselors, Massachusetts could "address" this alleged problem "through more targeted means," such as "existing local ordinances" that prohibit "obstruction" on sidewalks generally. *Id.* at 492-93. And if existing ordinances would not suffice, Massachusetts could enact a law "requir[ing] crowds blocking a clinic entrance to disperse when ordered to do so." *Id.* at 493.

So too here. Indeed, New York law has *already* taken both these options. Independent of § 425.31(*i*), it is unlawful to "obstruct[] vehicular or pedestrian traffic," N.Y. Penal Law § 240.20(5), or "congregate[] with other persons in a public place and refuse[] to comply with a lawful order of the police to disperse," *id.* § 240.20(6). And a separate provision of § 425 itself defines prohibited "harass[ment]" to include continuing a course of

---

*Blind of N.C., Inc.*, 487 U.S. 781, 791 (1988) (collecting cases). Thus, if a speech regulation "is not narrowly tailored," as here, this inquiry is irrelevant. *McCullen*, 573 U.S. at 496 n.9. In any event, Plaintiff has explained why the "alternatives" the County identifies are inadequate, Br.50; the County does not respond but simply restates what those alternatives are. Resp.26.

conduct "after an express or implied request to cease has been made."
§§ 425.21(c), 425.31(c). As the County is aware, if the problem is sidewalk
congestion, the solution is regulating sidewalk congestion. *Cf.* Laws of
Westchester County § 765.111(9) (making it unlawful on County facilities
to "obstruct[] … any drive, path," or "walk"). The County makes no effort
to show that such "less intrusive tools" have proven "ineffective." *McCullen*, 573 U.S. at 494.

In fact, compared to *McCullen*, this is an *a fortiori* case. In *McCullen*,
the law at issue prohibited *any* activity within the buffer zone around
clinics, including "merely … standing." *Id.* at 479-80. So there was at
least a logical connection between the law and the alleged "anticongestion interest." *Id.* at 493. Here, however, § 425.31(*i*) prohibits only certain
*approaches*—whether or not they cause congestion—while *permitting*
speakers to stand on the sidewalk outside the clinic and "remain stationary as individuals pass," Resp.26—no matter how much congestion results.

Indeed, if anything, the law *encourages* speakers (if they want to reach
their audience) to congregate and plant themselves in the most high-traffic areas, by punishing them if they freely move about. The Sidewalk

Counseling Ban therefore undermines the very interest the County claims it promotes. The "congestion" rationale is a red herring.[7]

**2.** The second interest the County asserts—that absent the Sidewalk Counseling Ban, it "may [be] more difficult for" a person to "enter a facility, if they need to try to evade a protestor or counselor," Resp.19—is likewise unavailing. Again, the County is simply defying *McCullen*.

In *McCullen*, too, Massachusetts said its buffer zone was needed to protect "patient access to healthcare." 573 U.S. at 480. Yet again, the Court held it had "too readily forgone options that could serve" this interest "just as well, without substantially burdening" the plaintiffs' speech. *Id.* at 490. The same statute "contain[ed] a separate provision" subjecting to criminal punishment anyone "who knowingly obstructs, detains, hinders, impedes or blocks another person's entry to or exit from" an abortion clinic. *Id.* at 490-91. And if Massachusetts thought further prohibitions were necessary, "it could enact legislation similar to the federal" FACE Act or try individualized injunctions. *Id.* at 491-93.

The same is true here. Other provisions of the same law at issue here prohibit the precise conduct the County says it is worried about, without

---

[7] Nor, contrary to the County's claim, is there anything inherently "quick" about the speech § 425.31(*i*) permits—*e.g.*, a reporter could conduct a several-minute interview or a pollster could take an extensive poll. Nor is there anything inherently "extended" about the speech § 425.31(*i*) prohibits—*e.g.*, it bars counselors from simply walking up and wordlessly offering a piece of literature or informing women in a single sentence where they can find available resources. *Cf.* Resp.24.

prohibiting Plaintiff's intended speech. Subsection (a) makes it a crime to "knowingly physically obstruct or block another person from entering into or exiting from the premises of a reproductive health care facility" or its parking lot. § 425.31(a). And "physically obstruct or block" is defined broadly to include any way of "render[ing] passage to or from" a reproductive health care's "premises" "impassable, unreasonably difficult, or hazardous." § 425.21(h).

Moreover, while the *McCullen* Court merely suggested that Massachusetts *could* enact a FACE Act analogue, here the County already has, in subsections (e) and (f). *See* Br.51-52. Those subsections make it a crime to, *inter alia*, "interfere with" (or attempt to interfere with) "another person" "by physically obstructing or blocking" that person "in order to discourage" them from "obtaining or providing … reproductive health care services." § 425.31(e)-(f). And "interfere with" is defined to include "restrict[ing] a person's freedom of movement." § 425.21(d).

Further, while recognizing—correctly—that *Plaintiff* "does not intend to surround an individual as part of a group of counselors or protestors," the County says it does not need to account for that to survive narrow tailoring. Resp.19-20. But *McCullen* says the opposite—praising the "First Amendment virtues of targeted injunctions as alternatives to broad, prophylactic measures." 573 U.S. at 492. If the County can "focus[] on the precise individuals and the precise conduct causing a particular problem," then it cannot "categorically" and "unnecessarily sweep[] in"

counselors like Plaintiff, *id.* at 492-93, who have no intention of "swarming" anyone, *cf.* Resp.19. The County's access argument is foreclosed by *McCullen*.

**3.** Finally, the County says the Sidewalk Counseling Ban is justified by an alleged "right to privacy with respect to the disclosure of medical information." Resp.20. The County seems to suggest that if others are forced to remain eight feet away, women can enter abortion clinics without "being identified"; but if others are allowed to approach within eight feet for the purpose of protesting, educating, or counseling, women could be identified and thus might be dissuaded from seeking "needed medical attention." Resp.20.

In fairness to the County, this interest at least was not squarely presented in *McCullen*. But surely the Court would have rejected it—because there is no "privacy" right not to be seen using public streets and sidewalks. When a person "travel[s] over the public streets he voluntarily convey[s] to anyone who want[s] to look the … fact of his final destination when he exit[s] from public roads onto private property." *United States v. Knotts*, 460 U.S. 276, 281-82 (1983).

Nor do the County's authorities remotely support this alleged "right." The County cites HIPAA, but that statute "prohibits the disclosure of medical records without a patient's consent," *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020); it does not cloak patients with invisibility while they are in route to the doctor's office. The County also

22

cites *Whalen v. Roe* for the proposition that "the possibility of being identified … 'may lead [individuals] to avoid or to postpone needed medical attention.'" Resp.20 (quoting 429 U.S. 589, 602 (1977)). But that case involved a law requiring doctors to disclose patient information to the state when prescribing certain drugs, 429 U.S. at 593, 599-600, not an alleged right of patients not to be seen on the public thoroughfare as they went to get their prescription.[8] Finally, the County cites *Dobbs*, but that decision of course declined to adopt the sort of amorphous "privacy" right the County urges here. *See* 142 S. Ct. at 2245 ("a right to privacy" is "not mentioned" in the Constitution). Regardless, *Dobbs* addressed only what rights individuals possess *vis á vis* the *state*, not *vis á vis* other private individuals on the street or sidewalk.

So regardless of narrow tailoring, this supposed interest simply "is not [one] that may be legitimately weighed against … speakers' First Amendment rights." *Hill*, 530 U.S. at 751 (Scalia, *J.*, dissenting). But even if it were, its relationship to the Sidewalk Counseling Ban is tenuous at best. Although eight feet is an inappropriate distance for the sort of intimate conversations Plaintiff intends to initiate, no one thinks it is difficult to *see* someone at that distance. And if preventing "identification" is the goal, Resp.20, the Sidewalk Counseling Ban does not advance

---

[8] The County also neglects to mention that the *Whalen* plaintiffs *lost*, with the Court holding that "[r]equiring such disclosures … does not automatically amount to an impermissible invasion of privacy." 429 U.S. at 602.

it—a person seeking to identify women walking into the clinic could simply approach them and do so, fully consistent with § 425.31(*i*), so long as the person does not "engag[e] in oral protest, education, or counseling."

\* \* \*

At bottom, there is only one interest the Sidewalk Counseling Ban is arguably narrowly tailored to promote—protecting abortion-clinic patients from the "potential trauma … associated with confrontational protests" and other "unwanted communication." *Hill*, 530 U.S. at 715-16. This alleged interest was the "linchpin" of the *Hill* Court's analysis. *Id.* at 750 (Scalia, *J.*, dissenting). But it appears nowhere in the County's brief.

Of course, in *McCullen*, the Supreme Court condemned such an interest as itself content based, since it is plainly "concerned with [the] 'impact of speech on its audience.'" 573 U.S. at 481; *see* Br.41, 48. The County understandably does not want to walk directly into that holding. But in avoiding it, the County has run away from the sole basis on which *Hill* would sustain its law. If not even the County can bring itself to embrace *Hill*'s rationale, that only underscores why it must be overruled.

## CONCLUSION

The district court's standing holding should be reversed.

Respectfully submitted,

/s/ Mark L. Rienzi

Mark L. Rienzi

Joseph C. Davis

Daniel L. Chen

Daniel M. Vitagliano*

THE BECKET FUND FOR
   RELIGIOUS LIBERTY

1919 Pennsylvania Ave. NW

Suite 400

Washington, DC 20006

(202) 955-0095

*mrienzi@becketlaw.org*

\*Admitted only in New York. Practice limited to cases in federal court. Supervised by a member of the D.C. Bar.

25

## CERTIFICATE OF COMPLIANCE

This document complies with the requirements of 2d Cir. R. 32.1(a)(4) because it has 5,941 words.

This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.


April 14, 2023          /s/ Mark L. Rienzi
                                        Mark L. Rienzi

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on April 14, 2023.

I certify that all participants in the case have been served a copy of the foregoing by the appellate CM/ECF system or by other electronic means.

April 14, 2023                          /s/ Mark L. Rienzi
                                        Mark L. Rienzi