*23-30*
*Vitagliano v. County of Westchester*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2022

(Argued: May 9, 2023        Decided: June 21, 2023)

No. 23-30

_____

DEBRA A. VITAGLIANO,

*Plaintiff-Appellant,*

-v.-

COUNTY OF WESTCHESTER,

*Defendant-Appellee.*[*]

_____

Before:        LIVINGSTON, *Chief Judge*, REENA RAGGI, and SUSAN L. CARNEY, *Circuit Judges*.

Plaintiff-Appellant Debra Vitagliano, an aspiring sidewalk counselor, brought a First Amendment challenge to Westchester County's recently enacted "bubble zone" law, which makes it illegal to approach within eight feet of another person for the purpose of engaging in "oral protest, education, or counseling" when inside a one-hundred-foot radius of a reproductive health care facility.    The

_____

[*] The Clerk of Court is respectfully directed to amend the official caption to conform to the above.

district court dismissed the complaint, holding that Vitagliano lacks standing to mount a pre-enforcement challenge to the bubble zone law, and that, in any event, the Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000), forecloses her First Amendment claim. We conclude that Vitagliano has standing to seek pre-enforcement relief because she has pleaded sufficient facts to support a credible threat that Westchester County will enforce the bubble zone law if she pursues her stated intention to engage in sidewalk counseling. We nevertheless affirm the judgment of dismissal because the district court correctly recognized that *Hill* dictates the conclusion that Westchester County's bubble zone law withstands First Amendment scrutiny. Accordingly, the judgment of the district court is **VACATED IN PART** and **AFFIRMED IN PART**.

<table>
<tr><td>FOR PLAINTIFF-APPELLANT:</td><td>JOSEPH C. DAVIS (Mark L. Rienzi, Daniel L. Chen, Daniel M. Vitagliano, *on the brief*), The Becket Fund for Religious Liberty, Washington, DC.</td></tr>
<tr><td></td><td>(Edward M. Wenger, Caleb B. Acker, Andrew B. Pardue, Holtzman Vogel Baran Torchinsky & Josefiak PLLC, Washington, DC, *for* Eleanor McCullen, as *amicus curiae*)</td></tr>
<tr><td>FOR DEFENDANT-APPELLEE:</td><td>JOHN M. NONNA, Westchester County Attorney (Justin R. Adin, Deputy County Attorney, Shawna C. MacLeod, Senior Assistant County Attorney, *on the brief*), Westchester County Attorney's Office, White Plains, NY.</td></tr>
<tr><td></td><td>(Stephanie Schuster, Emily Booth, Tanya Tiwari, Caiti Zeytoonian, Bichnga T. Do, Morgan, Lewis & Bockius LLP, Washington, DC, Boston, MA, and Los Angeles, CA, *for* Westchester Coalition for Legal Abortion – Choice Matters, Inc., Hope's Door, Westchester Women's Agenda, and</td></tr>
</table>

Planned Parenthood Hudson Peconic, Inc.,
as *amici curiae*)

PER CURIAM:

Plaintiff-Appellant Debra Vitagliano ("Vitagliano") is an aspiring pro-life sidewalk counselor who wishes to approach women entering abortion clinics and engage them in peaceful conversation about abortion alternatives. Vitagliano sued Westchester County (the "County"), pursuant to 42 U.S.C. § 1983, asserting a First Amendment challenge to its recently enacted "bubble zone" law, which makes it illegal to approach within eight feet of another person for the purpose of engaging in "oral protest, education, or counseling" when inside a one-hundred-foot radius of a reproductive health care facility. Vitagliano contends that the County's bubble zone law is a content-based restriction on speech that cannot survive strict or intermediate scrutiny.

Vitagliano appeals from a judgment dismissing her claim. The district court (Halpern, *J.*) determined *sua sponte* that she lacks standing to assert a pre-enforcement challenge to the County's bubble zone law and that, in any event, the Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000), which upheld a materially identical bubble zone law in Colorado, forecloses Vitagliano's First Amendment claim. We disagree in part. The district court's standing analysis

failed to credit Vitagliano's well-pleaded allegations detailing the efforts she undertook to become a sidewalk counselor and her plans to engage in such counseling. Because Vitagliano has alleged facts that demonstrate a credible threat of prosecution under the County's bubble zone law if she pursues her plans to counsel on the sidewalk, she has articulated an injury in fact that is sufficiently concrete and imminent to confer Article III standing. Accordingly, we vacate the district court's ruling insofar as it dismissed Vitagliano's suit for lack of standing. We nevertheless affirm the judgment on the merits because the district court correctly concluded that *Hill* is dispositive of Vitagliano's First Amendment claim.

## BACKGROUND

### I.     Factual Background

#### A.     Westchester County's Bubble Zone Law

On June 27, 2022, Westchester County enacted the Reproductive Health Care Facilities Access Act (the "Act"). Westchester Cnty., N.Y., Charter & Admin. Code ch. 425 (2023). The Act's stated purpose is to "prohibit interference with accessing reproductive health care facilities and obtaining reproductive health care services[.]" *Id*. § 425.11. The Act contains nine separate prohibitions

on conduct and speech outside of "reproductive health care facilit[ies]." *Id.*

§ 425.31(a)–(i).[1]

The focal point of this appeal is § 425.31(i), the provision of the Act that creates the so-called bubble zone. This section provides that it shall be unlawful to:

> Knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way within a radius of one hundred (100) feet from any door to a reproductive health care facility.

*Id.* § 425.31(i).[2]

---

[1] The Act defines a "[r]eproductive health care facility" as "any building, structure, or place, or any portion thereof, at which licensed, certified, or otherwise legally authorized persons provide reproductive health care services." Westchester Cnty., N.Y., Charter & Admin. Code § 425.21(k). "Reproductive health care services" is, in turn, defined as "medical, surgical, counseling, or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." *Id.* § 425.21(l).

[2] The Act defines "[a]pproach" as "to move nearer in distance to someone." Westchester Cnty., N.Y., Charter & Admin. Code § 425.21(a). It also specifies that "'[e]ight (8) feet' shall be measured from the part of a person's body that is nearest to the closest part of another person's body, where the term 'body' includes any natural or artificial extension of a person, including, but not limited to, an outstretched arm or hand-held sign." *Id.* § 425.21(b).

Although not challenged in the instant appeal, the Act also makes it illegal to: (1) "[k]nowingly physically obstruct or block another person" from entering or exiting a reproductive health care facility; (2) "[s]trike, shove, restrain, grab, kick, or otherwise subject to unwanted physical contact or injury" anyone seeking to legally enter or exit a reproductive health care facility; (3) "[k]nowingly follow and harass another person" within 25 feet of a reproductive health care facility or its parking lot; (4) "[k]nowingly engage in a course of conduct or repeatedly commit acts when such behavior places another person in reasonable fear of physical harm" within 25 feet of a reproductive health care facility or its parking lot; (5) "knowingly injure, intimidate, or interfere with" another by force, threat of force, or physical blocking "to discourage such other person" from "obtaining or providing" reproductive health care services; (6) "knowingly injure, intimidate, or interfere with" another by force, threat of force, or physical blocking "because such person was or is obtaining or providing" reproductive health care services; (7) "[p]hysically damage a reproductive health care facility so as to interfere with its operation"; and (8) "[k]nowingly interfere with the operation of a reproductive health care facility[.]" *Id.* § 425.31(a)–(h).

Violations of the Act are misdemeanors, with a first conviction punishable by up to $1,000 in fines and six months' imprisonment. *Id.* § 425.41(a). Subsequent convictions are punishable by up to $5,000 in fines and one year's imprisonment. *Id.* § 425.41(b). The Act also allows the County Attorney to bring civil enforcement actions for injunctive relief. *Id.* § 425.61. It further creates a private civil cause of action for treble damages and injunctive relief, which can be brought by "any person whose ability to access the premises of a reproductive health care facility has been interfered with," or by any "owner," "operator," "employee," "volunteer," and "invitee" of a reproductive health care center. *Id.* § 425.51. And the Act provides for joint and several liability for individuals who "acted in concert" to violate any of its prohibitions. *Id.* § 425.71.

### B.    Vitagliano and Her Pro-Life Activities[3]

Vitagliano is a 64-year-old mother of three and a resident of Westchester County. App'x 1, 4. She has worked as an occupational therapist for 42 years, primarily assisting special needs children. *Id.* at 4–5. She is a devout, practicing

---

[3] The facts concerning Vitagliano and her pro-life activities are taken from her complaint and are accepted as true for purposes of this appeal. *See Yamashita v. Scholastic Inc.*, 936 F.3d 98, 100 n.2 (2d Cir. 2019).

Catholic and, consistent with her faith, opposes abortion as contrary to her sense of morality.   *Id.* at 5.

Moved by her faith, in February 2021, Vitagliano began participating in a peaceful prayer-vigil campaign at the Planned Parenthood facility in White Plains, New York.   *Id.*   As part of the campaign, Vitagliano held signs with pro-life messages and prayed on the sidewalk and public way outside the facility.   *Id.* at 6.   During her activities outside of Planned Parenthood, Vitagliano observed others engage in sidewalk counseling by approaching women on their way into the clinic, speaking with them, and distributing pamphlets and other materials. *Id.*   Vitagliano felt compelled to engage in sidewalk counseling, hoping to inform women about abortion alternatives and advise them of available resources if they decide to forego abortion procedures.   *Id.*

Vitagliano "did not immediately engage in sidewalk counseling because she felt she first needed proper training."   *Id.*   In particular, she wanted to learn effective techniques for approaching pregnant women, develop ideas for what to say to them, and prepare herself for handling the different situations she may confront.   *Id.*   Vitagliano thus enrolled in and completed two online classes (an introductory course and an eight-week advanced course) on consulting pregnant

women considering abortion. *Id.* at 7. In spring 2022, Vitagliano obtained pamphlets from local pro-life organizers, "which she planned to distribute while engaging in future sidewalk counseling." *Id.* Upon completing her training, she volunteered as a "life consultant" at a local crisis pregnancy center, meeting with women experiencing unplanned pregnancies and consulting with them about their options. *Id.* Vitagliano began volunteering by shadowing other life consultants and now volunteers in this capacity for two hours every week. *Id.*

"Now properly trained and with experience as a life consultant," Vitagliano avers that she "is prepared to engage in sidewalk counseling," "would like to counsel women on the public way as they approach the White Plains Planned Parenthood," and would do so "[b]ut for" the County law at issue in this litigation *Id.* at 7, 15. If permitted, Vitagliano hopes to engage women entering the abortion clinic to explore the details of their stories through active listening and asking about their needs, feelings, and the reactions of their family members. *Id.* at 7–8. She would initiate conversations by telling women something to the effect of "[y]ou are not alone . . . [w]e can help you," and would inform pregnant women seeking abortions that there are people who will love and care for them and their children. *Id.* at 8. Drawing on her experience as a mother and occupational

therapist, Vitagliano wants to share options besides abortion and encourage them to carry their babies to term.  *Id.* at 9.  Before she could implement her training and engage in sidewalk counseling, the County enacted the bubble zone law.  *Id.*

## II.    Procedural History

In November 2022, Vitagliano filed suit against the County, asserting a First Amendment claim under § 1983 characterizing the County's bubble zone law as a content-based restriction on speech that fails strict scrutiny.[4]  *Id.* at 18–22.  The County filed a premotion letter concerning its anticipated motion to dismiss Vitagliano's claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Id.* at 29–31.  The County argued in this letter that the Supreme Court's decision in "*Hill* is directly on point and binding here, and remains controlling precedent unless and until the Supreme Court overturns it."  *Id.* at 30.  In response, Vitagliano acknowledged that *Hill* directly controls her claim and expressed her view that "*Hill* was wrongly decided, is irreconcilable with intervening precedent, and should be overruled by the Supreme Court."  *Id.* at 32.  Because she could not

---

[4] Vitagliano named Westchester County, County Executive George Latimer, and County Attorney John M. Nonna as defendants in her complaint.  App'x 3–4.  After the parties stipulated that Latimer and Nonna would be "bound by and subject to any injunction or declaratory judgment [Vitagliano] obtains against the County in this action," the parties agreed to drop Latimer and Nonna from the case.  *Id.* at 24-28.

obtain her desired relief in the district court, Vitagliano suggested that "[i]n the interest of judicial economy, [the district court] may therefore wish to dispense with formal briefing, treat [the County's] pre-motion letter as the motion, and dispose of it." *Id.* at 35.

In January 2023, the district court granted the County's motion to dismiss without further briefing. *See Vitagliano v. County of Westchester*, No. 22 Civ. 9370 (PMH), 2023 WL 24246 (S.D.N.Y. Jan. 3, 2023). The district court determined that Vitagliano lacks Article III standing and, even if she has standing, *Hill* forecloses her claims. On standing—which the parties did not discuss in their premotion letters—the district court held that Vitagliano had not adequately alleged an injury in fact stemming from the County's bubble zone restriction because "she has never engaged in sidewalk counseling" and "does not allege any concrete plans to do so at any point in the future." *Id.* at *3. As the court construed the complaint, Vitagliano "only alleged, in the most general fashion, that . . . her exercise of free speech has been chilled by the enactment of the Buffer Zone Provision." *Id.* (internal quotation marks omitted). The district court emphasized that Vitagliano alleged that she "would need 'proper training' before she would even consider sidewalk counseling." *Id.* Vitagliano thus harbored only an abstract

and subjective fear about the bubble zone law, which, according to the district court, is insufficient to confer Article III standing. *Id.*

On the merits, the district court, applying *Hill*, concluded that the bubble zone law withstands intermediate scrutiny. *Id.* at *3–4. Recognizing that the County's bubble zone law is materially identical to the Colorado law the Supreme Court previously upheld in *Hill*, the district court determined that the County's law is content neutral because "[i]t applies to all 'protest,' to all 'counseling,' and to all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision." *Id.* at *3 (quoting *Hill*, 530 U.S. at 726). The district court further concluded that the law "is clearly narrowly tailored to advance Westchester County's significant governmental interest in protecting individuals attempting to enter health care facilities from 'unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach.'" *Id.* (quoting *Hill*, 530 U.S. at 729).

## DISCUSSION

Vitagliano concedes that the Supreme Court's decision in *Hill* is binding precedent, and that the district court correctly applied this precedent in dismissing

her claim. Vitagliano nevertheless pursues this appeal in the hope that the Supreme Court will revisit and overrule *Hill* and hold that bubble zone restrictions like the County's violate the First Amendment. Vitagliano also asserts error as to the district court's standing ruling, contending that the district court premised its reasoning on an erroneous reading of her complaint and a misapplication of standing precedent. We review *de novo* both the district court's dismissal of a complaint for lack of standing and for failure to state a claim. *See Allco Fin. Ltd. v. Klee*, 805 F.3d 89, 93 (2d Cir. 2015).

## I.  Standing

We begin with standing "because it is a 'jurisdictional' requirement and 'must be assessed before reaching the merits.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014)). The district court determined that Vitagliano had not suffered an injury in fact and thus failed on

the first standing requirement. This conclusion, however, minimizes the concreteness of Vitagliano's plans to engage in sidewalk counseling, fails to credit her allegations concerning the efforts she took to learn how to become a sidewalk counselor, and overlooks the details as to how and where she plans to engage in such counseling. Under applicable precedent, Vitagliano has adequately alleged that she suffered an injury in fact and, furthermore, that this alleged injury was caused by the law at issue and is redressable by a ruling in her favor. Accordingly, Vitagliano has standing to bring this pre-enforcement challenge to the County's bubble zone law.

An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013) (emphasis and internal quotation marks omitted). "Pre-enforcement challenges to criminal statutes"— such as the County's bubble zone law—"are cognizable under Article III," as it is well established that a "plaintiff need not first expose [her]self to liability before

14

bringing suit to challenge . . . the constitutionality of a law threatened to be enforced." *Picard*, 42 F.4th at 97 (internal quotation marks and citations omitted). Courts apply a three-prong test to assess the existence of a cognizable injury in fact in the context of pre-enforcement challenges, which requires a plaintiff to demonstrate: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the intended conduct is "proscribed by" the challenged law; and (3) that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (internal quotation marks and citation omitted). In other words, "a plaintiff has standing to make a preenforcement challenge 'when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative.'" *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (quoting *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013)). Vitagliano has satisfied all three elements to establish that she has suffered an injury in fact related to the prospect of the County's enforcement of its bubble zone law.

*First*, Vitagliano's desire to engage in sidewalk counseling involves a course of conduct affected with a constitutional interest. Vitagliano alleges that she wishes to "stand on the public way outside of a White Plains abortion clinic,

15

approach women entering the clinic, and initiate gentle, compassionate conversations about the woman's situation and resources available should she decide to carry her child to term." App'x 1–2. As part of her intended sidewalk counseling, Vitagliano plans to distribute pamphlets containing information about the services and resources available to women who have children. *Id.* at 7, 9. These plans are clearly affected with a First Amendment interest. For one, "traditional public fora," such as the sidewalks and public ways where Vitagliano wishes to engage in sidewalk counseling, "are areas that have historically been open to the public for speech activities." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014). Furthermore, "[l]eafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment," especially in traditional public fora where speech "is at its most protected[.]" *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 377 (1997); *see also Hill*, 530 U.S. at 715 ("[L]eafletting, sign displays, and oral communications are protected by the First Amendment."). Because Vitagliano's intended activities involve peaceful communication on an issue of public concern in a public area, she has satisfied the first prong of the pre-enforcement injury-in-fact test.

16

The district court denied Vitagliano standing because she "only alleged, in the most general fashion, that . . . her exercise of free speech has been chilled by the enactment of the Buffer Zone Provision." *Vitagliano*, 2023 WL 24246, at *3 (internal quotation marks omitted). The district court emphasized that Vitagliano had "never engaged in sidewalk counseling," did not "allege concrete plans to do so at any point in the future," and needed "'proper training' before she would even consider sidewalk counseling." *Id.* The last statement, however, misconstrued the complaint, which explained that Vitagliano has now received such training. App'x 7. Further, a plaintiff asserting a pre-enforcement challenge need only allege "an intention to engage in a course of conduct," which does not necessarily require specification of the date and time she plans to do something of constitutional significance. *Picard*, 42 F.4th at 97 (quoting *Susan B. Anthony List*, 573 U.S. at 159). Vitagliano included in her complaint descriptions of the origin of her desire to become a sidewalk counselor, the steps she took to train and prepare to serve as a sidewalk counselor, the abortion clinic outside which she intends to provide sidewalk counseling, and the approach she plans to take when having sidewalk-counseling conversations. App'x 5–12.

This level of detail more than suffices to establish Vitagliano's "earnest desire to engage in sidewalk counseling" "but for" the enactment of the bubble zone restriction.   *Id.* at 15; *see also, e.g.*, *Silva v. Farrish*, 47 F.4th 78, 87 (2d Cir. 2022) (finding that a group of fishermen could bring a pre-enforcement challenge to state fishing laws when they alleged the regulations "deterred and chilled" them from fishing and that "they would fish if they did not fear prosecution"); *Picard*, 42 F.4th at 95, 97–101 (finding standing for a pre-enforcement challenge to a criminal statute restricting activity outside of courthouses for a plaintiff who alleged "[a]bsent his fear" of prosecution "he would continue to promote jury nullification outside New York courthouses").   That Vitagliano had not engaged in sidewalk counseling prior to the Act's passage does not require a different result.   *See Susan B. Anthony List*, 573 U.S. at 159 (requiring only an "intention to engage in a course of conduct" (internal quotation marks omitted)); *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1172 (10th Cir. 2021) (finding intent to engage in conduct where "[a]lthough Appellants have not yet offered wedding website services," they "provided clear examples of the types of websites they intend to provide"), *cert. granted on different question*, 142 S. Ct. 1106 (2022); *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 750 (8th

Cir. 2019) (finding standing where plaintiff planned to "enter" business that would be affected by challenged law).

*Second*, Vitagliano's sidewalk counseling is squarely proscribed by the Act. In evaluating this prong of the standing analysis, a plaintiff's intended conduct need only be "'*arguably* proscribed' by the challenged statute," not necessarily "*in fact* proscribed." *Picard*, 42 F.4th at 98 (quoting *Susan B. Anthony List*, 573 U.S. at 162). Vitagliano's allegations exceed the applicable standard. The challenged provision of the Act makes it illegal within 100 feet of an abortion clinic to "[k]nowingly approach another person within eight (8) feet," absent that person's consent, "for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling." Westchester Cnty., N.Y., Charter & Admin. Code § 425.31(i). This is precisely what sidewalk counseling entails and Vitagliano's allegations make it clear that her desired course of conduct is proscribed by the Act.

*Third*, and finally, Vitagliano has demonstrated that she faces a credible threat of enforcement if she follows through with her intention to engage in sidewalk counseling. The County contends that Vitagliano "has not identified a credible threat of enforcement, outside of the general existence of the law," and

argues that she must plead something more than an intention to engage in conduct clearly proscribed by the Act. Appellee's Br. 8; *see also id.* at 7–10. To be sure, "[t]he identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015). But the County's argument ignores the well-established proposition that "[w]here a statute specifically proscribes conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (internal quotation marks and citation omitted). Rather, we "presume[ ] such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed." *Id.* (internal quotation marks and citation omitted). The credible-threat standard "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review, as courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation*, 824 F.3d at 331 (internal quotation marks and citation omitted).

The County enacted the bubble zone restrictions in June 2022, just months before Vitagliano brought this action—hardly moribund—and Vitagliano's intended course of conduct falls squarely within the Act's prohibitions. Moreover, there is no indication that the County has disavowed enforcement of the bubble zone restriction; to the contrary, when asked at oral argument, the County declined to represent that county officials would not enforce the law. With no reason to doubt that the County will enforce its recently enacted law against those who violate its terms, we may presume that Vitagliano faces a credible threat of enforcement if she pursues her intention to counsel on the sidewalk.

The County relies on *Adam v. Barr*, 792 F. App'x 20 (2d. Cir. 2019), in which we held that a *pro se* plaintiff lacked standing to sue federal officials to enjoin potential enforcement of the Controlled Substances Act ("CSA"), 84 Stat. 1242, 21 U.S.C. § 801 *et seq.*, against him because he wished to possess and use marijuana for religious purposes. But *Adam*, an unpublished summary order, is not analogous to the instant case. *Adam* arose out of a suit against the federal government, involving a supposed threat of prosecution under a decades-old law with nationwide scope. We explained that the presumption that the government

21

will enforce its own laws "in and of itself, is not sufficient to confer standing, as courts also consider the extent of that enforcement in determining whether a credible threat of prosecution exists." *Adam*, 792 F. App'x at 23. Despite the CSA's extensive enforcement history, the plaintiff was unable to marshal examples of enforcement actions that involved the kind of personal religious use of marijuana in which he planned to partake. *Id.* at 22–23. Because the plaintiff had not "partizularize[d] the CSA's enforcement in relation to" his conduct, he was "simply . . . at risk just like any other person in the country who might violate the CSA." *Id.* at 23. We thus held that "the threat of enforcement against him [was] insufficiently imminent to confer Article III standing." *Id.* (citation omitted).

The circumstances of Vitagliano's case present an eminently more credible threat of prosecution. Vitagliano seeks to enjoin a newly enacted law aimed specifically at Westchester County reproductive health care facilities and designed to curb the very conduct in which she intends to engage outside such facilities. Far from the facts of *Adam*, Vitagliano's allegations reveal her intent to engage in conduct only recently criminalized and in the precise location that the new law

targets.   We are convinced that the "particular circumstances at issue" here make the threat of prosecution highly "credible."   *Knife Rights*, 802 F.3d at 384.

The County additionally cites several cases in which a plaintiff faced either previous enforcement actions or a stated threat of future prosecution under a challenged law.   *See* Appellee's Br. 8.   While evidence of such activity is, of course, relevant to assessing the credibility of an enforcement threat, none of these cases suggest that such evidence is *necessary* to make out an injury in fact.   *See, e.g.*, *Susan B. Anthony List*, 573 U.S. at 164 (observing "that past enforcement against the same conduct is *good evidence* that the threat of enforcement is not chimerical" (emphasis added) (internal quotation marks and citations omitted)).   Weakening the County's argument, we have explained that requiring an "overt threat to enforce" a criminal prohibition "would run afoul of the Supreme Court's admonition not to put 'the challenger to the choice between abandoning his rights or risking prosecution.'"   *Tong*, 930 F.3d at 70 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)).   And we have previously found standing where there was no "express threat of prosecution specifically directed at the plaintiff."   *Cayuga Nation*, 824 F.3d at 332 n.9 (citing *Knife Rights*, 802 F.3d at 384 n.4, 386–87).   Likewise, the Supreme Court and at least four other circuits have

23

sustained pre-enforcement standing without a past enforcement action or an overt threat of prosecution directed at the plaintiff.[5]

Vitagliano has thus adequately alleged an injury in fact for Article III purposes. She additionally satisfies the causation and redressability requirements, in that her injury is fairly traceable to the challenged bubble zone law and can be redressed by her requested relief, *i.e.*, a declaration that the bubble zone law is unconstitutional and an injunction enjoining its enforcement. *See Lujan*, 504 U.S. at 560–61. Therefore, Vitagliano has standing to bring this pre-enforcement challenge to the County's bubble zone law.

## II. Merits

We need not dwell on the merits of Vitagliano's First Amendment challenge to the County's bubble zone law, as Vitagliano concedes (and we agree) that the district court correctly applied *Hill* in dismissing her claim. At issue in *Hill* was a 1993 Colorado statute that made it unlawful within 100 feet of any health care

---

[5] *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988) (permitting a pre-enforcement challenge to a statute initiated before the statute became effective); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (finding pre-enforcement standing without a specific threat of prosecution and even though the criminal prohibition had "not yet been applied and may never be applied" to a particular course of conduct); *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 336–37 (5th Cir. 2020); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003).

facility to "'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person[.]'" *Hill*, 530 U.S. at 707 (quoting Colo. Rev. Stat. § 18-9-122(3) (1999)). Although not identical in all respects, the County's bubble zone law was modeled after this Colorado law.[6] Similar to Vitagliano, the petitioners in *Hill* were sidewalk counselors who alleged that Colorado's bubble zone chilled the exercise of their fundamental right to free speech. *Id.* at 708–09. Furthering the similarities between the two cases, the *Hill* petitioners asserted that Colorado's law was a content-based restriction on speech that failed strict scrutiny. *Id.* at 709.

The Supreme Court determined that Colorado's bubble zone law was content-neutral because it "simply establishes a minor place restriction on an extremely broad category of communications with unwilling listeners." *Id.* at 723. "Instead of drawing distinctions based on the subject that the approaching

---

[6] For instance, § 425.31(i) of the Act prohibits passing "any material" within the prescribed bubble zone, whereas Colorado's law restricted the passing of "leaflet[s] or handbill[s]." *Compare* Westchester Cnty., N.Y., Charter & Admin. Code § 425.31(i), *with* Colo. Rev. Stat. § 18-9-122(3). Moreover, the County's bubble zone restrictions operate only outside of facilities that offer reproductive health care services (including abortion facilities and anti-abortion pregnancy centers), whereas Colorado's law applies outside of all facilities licensed to provide medical treatment. *Compare* Westchester Cnty., N.Y., Charter & Admin. Code § 425.21(k)–(l), *with* Colo. Rev. Stat. § 18-9-122(4).

speaker may wish to address"—a paradigmatic regulation targeting content—the restriction "applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists, and missionaries," permitting each to "attempt to educate unwilling listeners on any subject," so long as they did not approach within eight feet without consent to do so. *Id.* Applying intermediate scrutiny, the Court held that the Colorado law was a valid time, place, and manner regulation that (1) was narrowly tailored to serve the important governmental interests of safeguarding public health and safety and shielding captive listeners from unwanted communication and (2) left open ample alternative channels for communication. *Id.* at 714–18, 725–30.

Vitagliano argues in her briefing why she believes *Hill* was wrongly decided and is irreconcilable with intervening Supreme Court precedent. These arguments have no bearing on the disposition of the appeal now before us. The Supreme Court has stated in clear terms that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case [that] directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (internal quotation marks and citation

omitted).   Accordingly, *Hill* remains controlling precedent and dictates that the County's bubble zone withstands First Amendment scrutiny.

## CONCLUSION

For the foregoing reasons, we **VACATE** the portion of the district court's judgment finding that Vitagliano lacked standing and **AFFIRM** the dismissal of Vitagliano's challenge to the County's bubble zone law on the merits.